# Mayor and City Council of Baltimore, Garn. of John T. Brashears, *vs.* Basil Root, use of James Armstrong.

Funds in the hands of the register of the city of Baltimore due by the city for the salaries of city officers, are not, upon grounds of *public policy and convenience*, liable to be *attached* by the creditors of such officers.

Municipal corporations are parts of the *State government* exercising delegated *political* powers for *public purposes*, and the rule exempting funds in the hands of one *State officer* due another from attachment, applies equally to the officers of such corporations.

The members and officers of public municipal corporations are officers of the government for the administration or discharge of public duties.

The act of 1825, ch. 114, sec. 2, authorising attachments on judgments to be laid in the hands of any "person or persons whatever, *corporate or sole*," does not include *municipal corporations; they are *excepted* by reason and necessity.

Mayor & C. C. of Balto., Garn. of Brashears, *vs.* Root.

In construing statutes, the *intention* of the makers must be regarded, and what is within such intention is within the statute though not within the letter, and what is within the letter but not within the intention is not within the statute.

The fact that the officer whose salary was attached could have *sued the city* therefor, does not authorize his creditor to *attach* the claim.

Because a claimant may sue, it does not follow that his creditor can *attach* the claim in *every case*, although as a *general rule* it may be so.

APPEAL from the Superior Court for Baltimore city.

*Attachment* on a judgment against Brashears at the suit of Root, laid in the hands of J. J. Graves, register of the city of Baltimore. It was admitted, that at the time of trial there were in the hands of the register funds of the corporation due Brashears, for services as a police officer of said city, sufficient to pay the judgment upon which the attachment issued. The court below, (FRICK, J.,) sustained the attachment, and from that judgment the garnishee appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*Grafton L. Dulany* and *Benjamin C. Presstman* for the appellant, argued, that the judgment below was erroneous, because the wages or salary of a public officer in the hands of the disbursing agent of a municipal corporation are not attachable in law. 3 *How.*, 550, *State of Maryland vs. Balto. & Ohio Rail Road Co.* 12 *G. & J.*, 438, *State, use of Washington County, vs. Balto. & Ohio Rail Road Co.* 9 *Wheat.*, 738, *Osborn vs. United States Bank.* 13 *Pet.*, 499, *Wilcox vs. Jackson.* 7 *Monroe*, 444, *Divine vs. Harvie.* 7 *Mass.*, 259, *Chialy, et al., vs. Brown*, 3 *Barr.*, 368, *Bulkley vs. Eckhert, et al.* These cases show that it is a well settled principle, that those who exercise *sovereign authority* cannot be impeded and obstructed in the discharge of their duties, by attachments laid in their hands by the creditors of the parties to whom they are to disburse salaries or funds for public services. The public interests would be injured by such an invasion of the duties of public officers, who are created and

Mayor & C. C. of Balto., Garn. of Brashears, vs. Root.

exist solely for the *public*. The great doctrine in all such cases is that of *inconvenience*, and the cases go upon the ground, that if such attachments were allowed, they would hinder and delay the successful operations of government. Our attachment laws do not say that they shall extend to *municipal corporations*, and they are exempted unless there is a special clause embracing them.

*T. Yates Walsh* for the appellee. Are the wages of a police officer of the city of Baltimore liable to be attached to enforce the payment of his debts? The affirmative of this proposition it is my duty and purpose now to maintain. And first, let us remark, that this officer could have *sued* the corporation for these wages if they had been withheld. The whole argument on the other side proceeds upon the theory, that the *sovereignty* of the city exempts her from the process of attachment, and yet the admission is, that Brashears, her *subordinate*, could have brought her before the court and recovered judgment for his claim. She cannot assume *the purple* for her own protection, but is to be allowed to throw it as a *shield* around the person of an unjust debtor. Such is the gross inconsistency involved in the argument on the other side.

I maintain, on the *contrary*, that *whenever* the original debtor can be *sued* by the *original party*, such *debtor is liable to the process of attachment*. The cases cited on the other side do not at all militate against this *position*. The cases in 13 *Pet.* and 9 *Wheat.* establish but *this*, that the funds in the hands of the agents of the federal government are *in fact in the possession of the government*. That government cannot be *invoked* to *litigation* by any contractor with whom she has dealt, and therefore she cannot be forced to assume the relation of a suitor by any third party claiming such contractor's rights. The case in 7 *Mass.* seems *directly to concede*, that if there was a right of *suit* by the garnishee against the trustee, the claim *would be liable to the trustee's process*. In the case in 3 *Barr.*, the money was in the hands of the commissioners as agents of the *State*, and the teacher himself could have brought no suit for it. No *authority* can be found for the

13    v.8

*assertion,* that where there is a right of action by an original *claimant* against a *debtor,* such debtor cannot be made a garnishee in attachment. The *sovereign* can never be brought into ' *his own courts;* and money in the hands of a *sheriff* or other executive officer cannot be attached. The reasons of the first proposition are sufficiently obvious, and those of the other are well expressed by the Court of Appeals, in the case of *Farmers Bank of Delaware vs. Beaston,* 7 *G. & J.,* 424 and 428, where the court distinctly intimate, that the exemption of the funds in the hands of the sheriff is because they are *in fact* and *in law* under the *protection of the court.*

But it seems to me hardly necessary in this case to rely upon any thing save the *charter,* the *organic law* of the *city of Baltimore.* By a reference to this, we may avoid the necessity of deciding upon the rights resulting from the *division* and delegation of sovereignties. The *State* might, by its organic *law,* and it may be said by an act of ordinary legislation, allow *itself to be sued.* And if so, all the *incidents* attaching to a defendant would belong to her new relation. It was clearly competent for the legislature, when the charter was given to the city of Baltimore, to *qualify* the sovereign powers, which, for the sake of the argument, I admit were conferred upon her. And what was the qualification? Baltimore town is erected into a city by the name of the *city of Baltimore,* and the inhabitants thereof constituted a body *politic and corporate* by the name of the Mayor and City Council of Baltimore, and as *such,* shall have perpetual *succession,* and by their *corporate name* may *sue and be sued, implead and be impleaded,* grant, receive and do *all other acts* as *natural persons.* Now in this connection, let us look to the attachment law of 1825, ch. 114, sec. 2, allowing attachments on *judgments* to be issued against the goods, chattels and credits of the defendant in the hands of the *plaintiff,* or in the hands of *any other* person or persons, *corporate or sole.* Now how can any considerations of public *policy* at the hands of the *judiciary* interfere with the force of language like this? The act of 1795, ch. 56, did not by terms extend to *corporations.* The language of the Court of Appeals, in *Somerville vs. Brown,* 5 *Gill,* 420, seems to establish

the principle, that the terms of the *statutes relating* to attachments are to be *strictly enforced.* Judge Dorsey, in that case, says, "in rendering credits the subject of attachment, all that the legislature designed to effect thereby in a case like the present was, to substitute as it were the attaching creditor to the rights of his debtor creditor, and to enable the former to recover that which the latter would have been entitled to recover had no attachment been issued." And again, "the design of the act of Assembly was simply to provide the means by which the attaching creditor could as effectually recover the credit as could the debtor creditor had no attachment been interposed." The majority of the court declare in that case, in effect, that the attachment binds every description of debt. What was the salary of this police officer? A debt. Was the money in the hands of a party liable to be sued? Most clearly. The legislature who passed the act of 1825 well knew the character of all the corporations that had been brought into existence by the State. They make no exception, and it is not, I humbly submit, for the courts under any plea of public policy *to add to their language.* Considerations of public *policy* are not for the courts but for the legislative branch of the government. The debt due by Brashears, I have a right to insist, was founded upon moral and legal considerations. I have a right to infer it was due for services and assistance necessary for his comfort, if not for his *livelihood.* All debts are presumed to be contracted under circumstances which call for payment at the hands of honest men. And when these considerations of public policy, as they are called, are pressed before the proper department, its constituents will hesitate long before giving immunity to fraud against the rights of the confiding creditor.

ECCLESTON, J., delivered the opinion of this court.

The present attachment was laid in the hands of J. J. Graves, the city register, who, at the time, as register, held money due by the Mayor and City Council of Baltimore to Brashears, the defendant, for his salary as a police officer. The judgment below sustained the attachment, and whether that decision is correct or not is the question for our consideration.

It has been repeatedly held, that money due by the government to its officers or agents for services rendered by them as such, whilst it remains in the hands of the government or in the keeping of its disbursing agents, is not liable to be attached or seized by the creditors of those having such claims upon the government. This is certainly true in regard to those who hold appointments directly from State authority. The opposite theory would be calculated to produce serious interruptions in the course of public business, and hinder and delay, if not entirely prevent, in some instances, the accomplishment of very important measures, depending for their successful termination upon the prompt and regular supply of the funds on which the officers or agents have to rely. Whilst treating of this subject in *Divine vs. Harvie,* 7 *Monroe's Rep.,* 444, the court say:

"It would be a mortifying circumstance to see a member of the legislature rendered unable to pay his sustenance, while attending on its session, because a creditor, who never dealt on the credit of the fund, should, by injunction, detain his compensation, on which he obtained credit with his host."

In *Chialey et al., vs. Brewer & Trustee,* 7 *Mass. Rep.,* 259, the treasurer of the county held $21.25, which was due to Brewer for services rendered by him as a juror. Under a statute of the State the plaintiffs made an effort to have this money applied to the satisfaction of their claim against Brewer; insisting that the treasurer was to be considered as his trustee under the statute. But the court held, that a public officer having money in hand to pay a demand, which one has on him merely as a public officer, cannot, for that cause, be adjudged his trustee. And the court say, "A contrary decision would be mischievous, as will appear from this single consideration: that it would suspend, during the pendency of an action, a possibility of settling the accounts of the officer, who should be summoned as the trustee; and it may be added, that it would unreasonably compel him to attend courts in every county in the commonwealth to answer interrogatories."

In *Bulkley vs. Eckert et al.* 3 *Barr's Penn. Rep.,* 368, Bulkley had a judgment against Ulp and Eckert, on which

an attachment issued. This writ was laid in the hands of J. Paul, who being a school director of a township in the county, and treasurer of the board of school directors, had in his custody, as treasurer, the public money to be applied to the support of the schools in the township. Ulp, one of the defendants, had been a teacher in one of these schools, and for his services as such there was money due him, but neither of the defendants had any other claim upon the garnishee. The decision in both courts was adverse to the claim of the attaching creditor, upon the ground that money in the hands of the treasurer, in his official character, could not be legally attached. The appellate court speak of his situation as being similar to that of a sheriff or prothonotary, having money in his hands as a public officer, which has been determined not to be subject to the process of attachment. The injurious effects upon the regular arrangement and administration of public business, by allowing such funds to be attached, are well described by Mr. Justice Sergeant, who, in delivering the opinion of the court says, "Great public inconvenience would ensue if money could be thus arrested in the hands of officers, and they be made liable to all the delay, embarrassment and trouble that would ensue from being stopped in the routine of their business, compelled to appear in court, employ counsel, and answer interrogatories, as well as take care that the proceedings are regularly carried on, and bail to return duly given. If a precedent of this kind were set there seems no reason why the State or county treasurer, or other fiscal officers of the commonwealth, or of municipal bodies, may not be subjected to the levying of attachments, which has never been attempted nor supposed to come within the attachment law. We do not, therefore, think this is such a debt as is contemplated by that law."

We do not understand the counsel for the appellee as contending that money due to a State officer for services, whilst it remains in the custody of a fiscal agent or officer of the State, can be attached. If the law will not permit it to be done in such a case, what good reason is there in support of such a principle, which does not also apply with perfect propriety to

county officers and those of municipal corporations? City charters are granted by the legislature for the purpose of carrying on the machinery of government within certain limits. And the power conferred in them to appoint fiscal agents and police officers, and to provide compensation for their services, are essentially necessary for carrying into effect the object and design of such charters as create corporate powers, which are, in reality, but branches of the State government having delegated limited authority. Chancellor Kent says, on page 275 of the *2nd Vol.* of his *Commentaries:* "Public corporations are such as are created by the government for political purposes, as counties, cities, towns and villages, and the whole interest in them belongs to the public." In the *Regents of the University of Maryland vs. Williams,* 9 *G. & J.,* 397, the court say: "A public corporation is one that is created for political purposes, with political powers, to be exercised for purposes connected with the public good in the administration of civil government; an instrument of the government subject to the control of the legislature, and its members, officers of the government, for the administration or discharge of public duties, as in the cases of cities, towns," &c. And again it is said: "The corporation of the University has none of the characteristics of a public corporation. It is not a municipal corporation. It was not created for political purposes, and is invested with no political powers. It is not an instrument of the government created for its own uses, nor are its members officers of the government, or subject to its control in the due management of its affairs."

As municipal corporations are parts of the State government exercising delegated political powers, for public purposes, the rule which prevents an attachment from being levied upon a claim of one State officer on funds in the hands of another, applicable to its payment, must apply with equal force to a case like the present. If an argument against the right to attach, based upon inconvenience, can have an influence in any case, it surely should do so where the officers of a large city are, necessarily, very numerous.

The appellee's counsel, however, contends that the attach-

ment is clearly authorised by the act of 1825, ch, 114, sec. 2, which provides for an attachment against the goods, chattels and credits of a defendant in a judgment, " in the hands of the plaintiff, or in the hands of any other person or persons whatever, corporate or sole." This he thinks renders not only private corporations, but those of a public municipal character also, liable to such process. But we do not agree with him. There is no necessity to give such a construction for the purpose of giving effect to the law, as there are institutions on which it may operate, without carrying it to the extent insisted upon by the appellee.

The argument from inconvenience, which, exclusive of the act, prohibits or denies the right of attachment, we think will sanction the construction that the legislature did not design to include municipal corporations. Although the language of the law of Kentucky, which was under consideration in *Divine vs. Harvie,* is very general and comprehensive, yet its general terms were not considered sufficient to entitle a creditor of an officer or employee of the State to demand payment of his claim out of a sum of money allowed the employee in the ordinary appropriation bill. There the public inconvenience exerted considerable influence upon the decision.

In *Chialcy, et al., vs. Brewer & Trustee,* the court were called on to construe a statute under which the plaintiffs sought to enforce the payment of their claim against Brewer, by demanding payment of the county treasurer out of money in his hands due to Brewer as a juror. There the injury to the public arising from sustaining such a proceeding is referred to as worthy of much consideration by the court in giving an interpretation to the statute.

In Pennsylvania the law relative to domestic attachments, passed in 1807, by its 2nd section, provides, that the officer to whom the process is directed " shall attach all the lands, goods, chattels and effects of the defendant or defendants, in whose hands soever the same can be found." And the act passed in 1836, on the same subject, prescribes the form of the writ; in which command is given to the sheriff to attach all and singular the goods and chattels, lands and tenements of the

defendant, "in whose hands or possession soever the same may be." The 4th section then directs, that the writ shall contain a clause requiring the officer "to summon the garnishee, or person in whose hands any of the defendant's money or other effects may happen to be." This language is certainly very general, and looking at it in regard to its common import and meaning, would seem to authorize an attachment to be laid on the property and effects of a defendant in the hands of *any person* having the same, whether the parties, or either of them, were officer or not. And yet we find the courts deciding, in *Bulkley vs. Eckert, et al.*, that the fiscal officers of the State or county, or of municipal bodies, are not subject to the levying of attachments, and have never been supposed to come within the attachment law. Now, if in that case the treasurer of the board of school directors of a township having money in his custody to be applied to the support of the schools, is not, according to the proper construction of those laws, a person in whose hands any money or effects of the teacher are to be found, although for services rendered by the teacher there was money due him, and the necessity for guarding the public against the evils resulting from a different theory, induced the construction given in that case, there is just as much propriety, from necessity, in the present instance, for holding, that although the act of 1825 gives authority to levy an attachment in the hands of any person or persons, *corporate or sole*, nevertheless officers of a municipal corporation are not subject to the provisions of that act. The principle seems to be well settled, that without this act such officers would not be liable to process of this sort. That necessity which established this principle, and which likewise justified the Pennsylvania courts in so restricting the general language of their statutes as not to include even the treasurer of the board of school directors for a township, will not permit us so to construe our law as to sustain the plaintiff's claim. Reason and necessity we think fully justify the construction that the act does not include but excepts cases of this sort. In *Dwarris on Statutes*, 728, in 9 *Law Lib.*, 63, it is said: "In law all cases cannot be foreseen or expressed; the object of interpreting laws by what is called

## DECEMBER TERM, 1855. 105

Mayor & C. C. of Balto., Garn. of Brashears, vs. Root.

equity, is to supply, as far as possible, this deficiency, by a recurrence to natural principles of justice. It is the same with cases *excepted* by reason and necessity out of the prescribed rules. As relates to this branch of interpretation last considered, when cases fall out which should not be determined by the literal rule, and therefore excepted out of it, the expressions of *Grotius* are strictly applicable: "*Fit autem, ea correctio, non tollendo legis obligationem, sed declarando legem in certo casu, non obligare.*" And in the case of the *State, use of Mayor & City Council of Balto., et al., vs. Boyd,* 2 *G. & J.,* 374, the court say: "Statutes are sometimes extended to cases not within the letter of them, and cases are sometimes excluded from the operation of statutes, though within the letter; on the principle that what is within the intention of the makers of a statute, is within the statute, though not within the letter; and that what is within the letter of a statute, but not within the intention of the makers, is not within the statute; it being an acknowledged rule in the construction of statutes that the intention of the makers ought to be regarded."

In *Hawthorn vs. City of St. Louis,* 11 *Missouri Rep.,* 59, it was decided that under the provisions of the statute of that State, to be found in the *Revised Code of* 1835, *page* 254, a public municipal corporation could not be summoned as garnishee, on account of a sum due to an officer of the corporation as part of his salary, although it had been held that private corporations might be "proceeded against by garnishment." Hawthorn caused the city of St. Louis to be summoned as garnishee of Clark, who was recorder of the city, the plaintiff being an execution creditor of Clark, to whom the city owed a balance on account of his salary. Because the city was "a public municipal corporation, created for the public benefit," the court held it not to be subject to the rules governing private corporations, such as banks, insurance companies, and other similar corporations. They then say: "It should not, therefore, be compelled to stand at the bar of all the courts in the State and participate in the judicial controversies carried on between debtors and creditors. Whilst these contests would be going on the public interest would suffer, by abstracting

14   v.8

from their corporate duties the time and attention of the officers, and occupying them in contests about which the corporation had no interest. And however desirable it may be to creditors to enforce against the officers of the corporation their just demands, by the means resorted to in this case, yet we think that public policy forbids the imposition of such a liability upon the corporation.''

Neither in the Massachusetts or the Pennsylvania case are the officers held to be excluded from the operation of their attachment laws, because those laws are considered as having reference to *persons as individuals*, and not to corporations. And in the Missouri decision the liability of private corporations is distinctly recognized. In all those cases we find the exemption of officers from attachments placed upon considerations of public policy, having in view the necessity of preventing serious impediments to the prompt and efficient discharge of official duties; just such considerations as should exclude the present parties from the operation of the act of 1825, by construing its language as not including corporations of a public municipal character.

The counsel for appellee says, that under the city charter the defendant, Brashears, could have sued the corporation for his claim, if his salary had been improperly withheld: and being a claim for which he had a right of action, it was a credit subject to attachment. Admitting, however, that Brashears might have maintained an action against the corporation, still the right of the appellee to attach the claim is not relieved from the objection to it, based upon considerations of public policy. Because a claimant may sue, it does not follow that his creditor can attach the claim in every case, although as a general rule it may be so. There is no intimation in the Pennsylvania case that the school teacher could not have sued the treasurer of the board of school directors. And although in *Hawthorn vs. The City of St. Louis* the liability of the city to be summoned as garnishee was denied, yet there can be no doubt that Clark, the recorder, had a right to sue the corporation for the amount of his salary then due. That this is true may be seen by reference to the decision in *Carr vs. The*

*City of St. Louis*, 9 *Missouri Rep.*, 191. There the plaintiff claimed fees due from the corporation to him, as *recorder* of the city, and his right to recover was sustained. See also article 1, section 2, of the amended charter of St. Louis, approved February 15th, 1841, and article 1, section 2, of "An act to reduce the law incorporating the city of St. Louis, and the several acts amendatory thereof, into one act, and to amend the same," approved February 8th, 1843.

Under the belief that the claim of Brashears was not liable to attachment, we must reverse the judgment below.

*Judgment reversed and no procedendo ordered.*