GEORGE W. WILSON, and FREDERICK SASSCER, and SAMUEL B. HANCE, Administrators of ZADOCK SASSCER, JR. *vs.* CHARLES RIDGELY, JR., Surviving Obligor, WILLIAM A. JARBOE, Garnishee, and MARGARET ANN RIDGELY, Claimants, &c.

*Pleading in Action on Collector's bonds—Principal and surety—Assignment of judgment—Execution—Misjoinder—Funds in the hands of public officers not liable to attachment.*

In suits upon collector's bonds no assignment of breaches is necessary.

In an action on a collector's bond, judgment was entered in 1866, for the penalty of the bond, "to be released on payment of the amount of the Comptroller's certificate, and subject to such insolvencies and removals as may be certified to the Treasurer by the County Commissioners." On the 12th of August, 1869, the certificate of the Comptroller was filed in the case showing the amount due the State with interest, and the judgment was extended for this sum. Afterwards the judgment was credited upon the Comptroller's certificate with certain sums for insolvencies, and afterwards, on the same authority, with a further sum for interest upon the judgment, which was "remitted or authorized to be done by law." This judgment was afterwards satisfied by the payment of the whole amount due thereon, by W. one of the sureties, and the administrators of S. another surety, who had died before the institution of the suit; and thereupon the judgment was entered to the use of W. for one-half the amount then due thereon, and to the use of the administrators of S. for the other half of said amount. Afterwards an attachment on the judgment was issued by W. and the administrators of S., and laid in the hands of J. upon certain funds alleged to be held by him as county treasurer, the same being the surplus proceeds of the sale of land, assessed to the principal debtor in the judgment for taxes due and unpaid by him. On motion to quash the attachment, it was HELD:

1st. That the credits on the judgment could not now be urged against its validity.

2nd. That the defendants in the original suit having appeared by attorney, and no pleas having been filed, it must be assumed, that the judgment was entered by the consent of their attorney.

3rd. That inasmuch as S. had no judgment recovered against him, but had died before the suit was begun, his administrators were not entitled to an assignment of the judgment recovered against the principal and the other sureties, and to execution thereon, notwithstanding they may have satisfied the said judgment.

4th. That to entitle a surety to an assignment and execution against his co-sureties under sec. 7 of Art. 9 of the Code, it is incumbent upon him not only to satisfy the judgment, but to pay the *whole amount* of it.

5th. That if W. had satisfied the judgment in this case, that is *paid the balance* due upon it, he was entitled to an execution against his *principal*, but *not* against his *co-sureties*, for it appeared he did not pay the *whole* debt for which the judgment was rendered.

6th. That he could not, however, join with the administrators of S., even if they were entitled to an assignment and execution, as the assignment was not to them jointly, but one-half to each of them.

7th. That such joinder was therefore fatal to the attachment.

8th. That the surplus proceeds of the land of the attachment debtor, sold for non-payment of taxes, was not liable to attachment in the hands of the county treasurer.

APPEAL from the Circuit Court of Prince George's County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*Richard B. B. Chew* and *William H. Tuck,* for the appellants.

Under the circumstances of this case Wilson was clearly entitled to an assignment of the judgment, and to execution by attachment, or otherwise, for the amount paid by him. The judgment was *fully* paid to the State. *Nothing* remained due—one-half having been paid by Wilson and the other half by Sasscer's estate. The case of *Hollingsworth vs. Floyd,* 2 *H. & G.,* 87, was decided on the ground

that there had been a *partial* and not a full payment of the judgment by a surety, and because the Courts will not recognize the *anomaly* of creating distinct interests in the same debt, in both creditor and surety. Here no such anomaly exists—and Wilson's right to the assignment of the judgment, and of execution for the amount paid by him, is clearly within the principles of the said decision, and the legislation of this State upon this subject. Code, Art. 9, sec. 6 ; 1864, ch. 243. The fact that one-half of the debt was paid by Sasscer's estate, against whose administrators no judgment had been recovered, cannot deprive the other surety, who has paid one-half of the judgment for the same debt against the principal and himself, of the assignment for one-half of the judgment so paid by him, as against the principal. The other half of the debt being paid, the payment of his half is all the creditor could demand, and entitles him to an assignment *pro tanto* of the judgment, and to the right of the execution in his own name ; and he takes, by the assignment, the same rights which the creditor had, who had been fully paid, as to the amount so paid by him. He could not have satisfaction of the judgment for a greater amount than he had paid ; and the judgment for the amount paid by Sasscer's estate would remain as a security for the benefit of that estate, if the administrators are not entitled to the assignment under the Act of 1864, ch. 243. If the administrators of Sasscer are not so entitled, the fact of their being joined in the attachment, does not invalidate the writ as to Wilson. In *Hollingsworth vs. Floyd*, the writ was sustained as to Hollingsworth, the original creditor, whose position Wilson occupies. Moreover, the third reason concedes, that if there had been a separate judgment against Sasscer's administrators, that Wilson and Sasscer's administrators would have been entitled to separate executions for the amounts respectively paid by them.

It is said there was no judgment against Sasscer's administrators, and that his administrators are not entitled to an assignment of the judgment under the Act of 1864, ch. 243, for the amount, which it is conceded, was paid by Sasscer's estate.

It is admitted that no case precisely similar in circumstances to this has been decided in this State, namely, whether a surety on a bond who pays the debt before a judgment against him, but after judgment against the principal, or against the principal and another surety, is entitled to an assignment at law, of said judgment in whole or in part, according to his payment of the whole or part of the debt.

But analogous principles have been decided, and it is submitted that these administrators are embraced in the equitable operation of those principles. In *Hollingsworth vs. Floyd*, the Court declares that a surety, who has paid the whole debt, is entitled to an assignment of the judgment, and all liens which the principal had given the creditor. The principle is the same where two sureties, against whom judgments have been recovered, pay the debt in equal or unequal proportions, they are entitled to the assignment in the proportions in which they have paid.

In *Sotheron vs. Reed*, 4 *H. & J.*, 309, and *Norwood vs. Norwood*, 2 *H. & J.*, 238, where there were separate judgments against the principal and the surety, and the latter paid the judgment against *him,* the Court sustained an execution on a judgment against the principal, endorsed for the use of the surety without any assignment of the judgment, on the ground that the *payment* by the surety operated at *law*, and in equity, as an assignment of the judgment against the principal debtor, and that therefore it was strictly correct to carry on the execution against the principal, for the use of the surety, to its full completion. In the case of *Smith's Ex'rs vs. Anderson, et al.*, 18 *Md.*, 520,

where separate judgments had been recovered, one against Wm. Anderson, principal, and Absalom Anderson, one of the sureties, (which had been superseded by Wright and Clary,) and another against the executors of Smith, the other surety, with Absalom Anderson for William P. Anderson, in the same bond to John H. Anderson, who, by execution, caused the executors to pay the full amount of the judgment against them out of their testator's assets, it was decided that the executors were entitled to an assignment of the judgment against William P. Anderson and Absalom Anderson, and to enforce the payment thereof against Absalom Anderson, for one-half of the amount against him and Wm. P. Anderson—the latter being insolvent.    When a judgment is rendered against the principal, or against the principal and one surety, and their liability is then ascertained and determined, cannot another security pay the debt before judgment, save himself the cost of further litigation, and by such payment become entitled to an assignment of the judgment and execution against the principal, as in *Sotheron vs. Reed,* or to an execution in his own name, to such rights of assignment as a Court of equity would accord to him under similar circumstances?    Can the fact that no judgment is rendered against the surety, vary his equitable right to the assignment of the judgment and execution against the principal resulting from his payment?    Can't he perform his honest contract without the compulsory process of the law, and having the sheriff's hands laid upon his property?    It is the *payment* of the debt by the surety which creates the right to the assignment, and consequential right of execution—provided the original creditors were fully satisfied.

But here there was no voluntary payment—unlike the case of *Smith's Ex'rs vs. Anderson;* Sasscer died before judgment against him, and there was no judgment against his administrators—his estate was administered in equity,

and these subjected to the payment of the amount for which the judgment was entered to the use of the administrators.

His liability was determined in that suit. The decree operated in the nature of a judgment for all the creditors, and after the decree in that case, there could be no judgment at law against the administrators, and the suit against them ceased. *Brooks vs. Dent, Adm'r of Browner*, 4 *Md. Ch. Dec.*, 473.

It is submitted that payment by the estate of a surety under such circumstances, does entitle the representatives of that estate, under the Act of 1864, ch. 243, to an assignment of the judgment recovered by the creditor against the principal, as made in this case for the amount so paid.

In Virginia and Kentucky, it has been held that the record of a judgment or decree in one State against the principal and one surety in an administrator's bond, is evidence against another surety in the same bond, residing in another State, sued in the latter State for contribution, by the surety in the former State, who had paid the judgment there recovered, of the extent of the liability of the defendants in the State where the judgment or decree was recovered, and of the amount the surety, sued for contribution, was liable to pay in the State where sued. 1 *Robinson's Practice*, 226, secs. 1 *and* 2; *Cobb vs. Haynes*, 8 *B. Monroe,* 137; *Buford vs. Buford*, 4 *Manford*, 241; 1 *Greenleaf Ev.*, secs. 187, 527, 538, 539.

Under the 5th section of this Article of the Code, any surety in the class of obligations therein referred to, who shall pay or tender the money due thereon, whether the whole be due, or part has been previously paid, shall be entitled to an assignment, (of the obligation,) and may, by virtue of such assignment, maintain an action in his own name against the principal debtor.

And so under the 6th section, it is competent for the creditor to assign a judgment recovered against the prin-

cipal to the sureties, who may have paid it, although judgments may not have been recovered against all the sureties. These provisions of the Code, including the Act of 1864, ch. 243, are to be liberally construed as remedial and beneficial Acts. *Crawford vs. Brooke*, 4 *Gill*, 222.

The Courts in construing them have not held themselves bound by the strict letter or words of the law, but have aimed to give relief co-extensive with that which could be obtained in a Court of equity, in case of the refusal of the creditor to assign. In the case of *Anderson vs. Smith's Executors*, there was no judgment against Smith, one of the sureties, as there should have been if the words of the law prevailed, but against his *administrators*, and so in *Hall, Administrator vs. Creswell, et al.*, 12 *Gill & Johnson*, 49, yet the Court held that the surety by whom the debt was paid, was entitled to an assignment of the judgment against the principal and surety in the former case, and the executors of the principal in the latter case.

Can it be doubted that in equity, if the creditor here had been a natural person, he could be compelled to assign the judgment against Ridgely and Wilson, to Wilson and the administrators of Sasscer, upon the facts contained in the record? The cases cited support this proposition, especially the case of *Anderson vs. Smith's Ex'rs*, and also the right and duty of Comptroller and State's Attorney to make the assignment in this case.

It is asserted in the third reason, that if there had been a judgment recovered by Sasscer's administrators, and they had paid half the debt, they should have sued out a separate attachment. The assignees succeeded to the rights of the assignor. Before the Act of 1862, ch. 262, (Sup. to Code, vol. 1, Art. 29, sec. 16,) a plaintiff could have but one execution at the same time. That Act does not give the right to more than one execution at the same time, except where an attachment is to be laid in the hands of

different garnishees, or to affect different funds or property than that seized under the first writ, or where a *fi. fa.* is to affect other property than that taken under the first writ.

On the fourth, fifth and seventh reasons to quash. It is submitted that the judgment upon the attachment issued is a final and valid judgment. There is nothing in the record to indicate that the breaches of the bond were not duly assigned. But it is not necessary in a suit upon a creditor's bond to assign the breaches for which the damages are claimed. The proceeding is regulated by the provisions of the Code, Art. 81, secs. 80 and 82.

On the sixth reason to quash. The attachment was laid in the hands of Wm. A. Jarboe, not as treasurer, and designed to affect a balance remaining in his hands, of the proceeds of sale of certain real estate, sold by him for the payment of State and county taxes, after the satisfaction of these taxes. The appellants claim that this fund belonged to Ridgely, notwithstanding the conveyances by him to his children, referred to in the pleas, because of the fraudulent character of these conveyances. It is conceived that the only question arising on this appeal as to this matter is, whether this balance, under the circumstances stated, was liable to attachment. The reasons relied on by the garnishee are, that the attachment was laid in his hands, as a public officer, seeking to attach money in his hands as treasurer, &c., which did not in fact belong to the defendant. It is to be observed, that the attachment was not laid in his hands as treasurer, and that he does not appear as garnishee in that character. The material ground alleged is, that the funds sought to be attached did not belong to the defendant. The appellants will rely on the following authorities in support of the right to maintain the attachment. *Hinkley on Attachment, p.* 38, *sec.* 103, *p.* 42, *secs.* 123, 124, 125; *Cockey, Garnishee vs. Leister,* 12 *Md.*, 129; *Groome, Adm'r vs. Lewis,* 23 *Md.*, 149.

*Frank H. Stockett* and *C. C. Magruder*, for the appellees.

The joinder in the writ of George W. Wilson, against whom the judgment had been recovered, and the administrators of Zadok Sasscer, against whom no judgment had been recovered, was erroneous, and these parties, if entitled to an attachment at all, should have sued out several attachments, their interest being separate and distinct.

The judgment on which that attachment was issued, was interlocutory and not final, and furnished no proper record of a judgment on which an execution of *fieri facias* or attachment could have issued.    *Clammer, &c. vs. State, use of Beall,* 9 *Gill,* 279.

Said attachment was laid in the hands of William A. Jarboe, who, as the treasurer of the county, was a public officer, and against whom no attachment would lie. *Mayor and City Council of Baltimore vs. Basil Root,* 8 *Md.,* 95, 101, 102 ; *Bulkley vs. Eckert,* 3 *Barr (Penna.) Rep.,* 368.

The entry of said judgment for the use of George W. Wilson and the administrators of Zadok Sasscer, was not authorized by law, and was therefore void. *Peacock, Assignee of State vs. Pembroke,* 8 *Md.,* 348 ; 1864, *ch.* 243, *Sup. to Code, Art.* 9, *sec.* 8 ; *Swan vs. Patterson,* 7 *Md.,* 164 ; *Hollingsworth vs. Floyd,* 2 *H. & Gill,* 87 ; *Carroll vs. Bowie,* 7 *Gill,* 35.

GRASON, J., delivered the opinion of the Court.

The judgment on which the attachment in this case was issued, was recovered at November term, 1866, against Charles Ridgely, Jr., and George W. Wilson and Fielder Suit, two of his sureties, on a tax-collector's bond ; Zadok Sasscer, the other security thereon, having died before the institution of the suit.   It appears that the judgment was satisfied by the payment of the whole amount due thereon by George W. Wilson and the administrators of Zadok

Sasscer, and thereupon the State's attorney for Prince George's County, upon the order of the Comptroller of the treasury, entered said judgment to the use of George W. Wilson for $1042.06, and to the use of the administrators of Zadok Sasscer for the same amount, being the other half thereof. On the 14th June, 1875, after the assignment of the judgment to them, the appellants, Wilson, and the administrators of Zadok Sasscer, issued an attachment on the judgment, which was laid in the hands of William A. Jarboe, upon certain funds alleged to be held by him as county treasurer, the same being the surplus proceeds of the sale of land, assessed to Charles Ridgely, Jr., for taxes due and unpaid. Upon the return of the attachment, pleas were filed by the claimants of said funds, who are not before us on this appeal; and afterwards a motion to quash the attachment was filed, the motion was sustained, the attachment was quashed, and this appeal was taken.

It was contended by the counsel of the appellees, that the attachment was properly quashed, because the record does not disclose whether the judgment against the principal and sureties in the collector's bond, was ever properly entered, and because no breaches in the condition of the bond were ever assigned. Upon the return of the summons in that case, the defendants appeared by attorney and no pleas were filed, and it must be presumed that the judgment was entered by the consent of their attorney.

In suits upon collector's bonds, no assignment of the breaches of the bond is necessary, as Article 81, section 82, of the Code provides that, in reply to a plea of performance, the State may reply that the obligor or obligors hath or have not performed the condition of his or their bond, and give the special matter in evidence, and that it shall not be necessary to set out the breaches. The judgment was entered for the penalty of the bond, "to be released on payment of the amount of the Comptroller's certificate,

and subject to such insolvencies and removals as may be certified to the Treasurer by the County Commissioners." On the 12th August, 1869, the certificate of the Comptroller was filed in the case, showing the amount due the State to be $2783.63, with interest from June 21st, 1864, and the judgment was extended for this sum. Afterwards the judgment was credited, upon the Comptroller's certificate, with insolvencies amounting to the sum of $649.89, and afterwards, on the same authority, with the further sum of $49.62, interest upon the judgment which was "remitted or authorized to be done by law." The credits reduced the judgment to the sum of $2084.12. These credits were for the benefit of the defendants; were authorized to be entered by the terms of the original judgment, and must be presumed to have been entered by their consent and authority, and cannot now be urged against the validity of the judgment.

At common law, a surety in a bond, upon which judgment had been recovered, had no right, upon paying the amount of the judgment, to have it assigned to him, so as to enable him to have execution against his principal or co-sureties.

To give him a more speedy and efficient remedy than the common law provided, the Act of 1763, chap. 23, sec. 8, was passed, which authorized an assignment of a judgment by the creditor to a surety in the bond, and an execution thereon in the name of the surety who had paid and satisfied the judgment. But it was held, under the provisions of this Act, that when the State had recovered a judgment upon bond with surety there could be no assignment to the surety satisfying the judgment, for the reason that there was no person authorized by law to make the assignment. So the law remained until the Act of 1864, chap. 243, amended Article 9 of the Code, by providing an additional section to come in after section seven, and which enacted, that "in any case where judgment

shall be recovered by the State against any principal debtor and a surety or sureties, and said judgment shall be satisfied by said surety or sureties, the same shall be entered by the attorney representing the State to the use of the surety or sureties satisfying the same, on the said attorney filing in the case a certificate of the Comptroller stating that said judgment has been satisfied, and said surety or sureties shall then be entitled to execution in his or their own name or names, and subject to the same provisions provided in the last two preceding sections.'' The two preceding sections are sections six and seven, the former of which provides that when a judgment shall be recovered against a principal and surety, and the judgment shall be satisfied by the surety, he shall have an assignment of the same and an execution in his own name against his principal; and the latter provides that where there is a judgment against several sureties, and one of them shall satisfy the whole, he shall have an assignment and execution against his co-sureties for a proportionable part of the debt paid by the assignee. It will be perceived that under none of these sections is a surety entitled to an assignment and execution, unless there has been a *judgment recovered against him.* Zadok Sasscer not only had no judgment recovered against him, but he died before the suit was begun. His administrators are therefore clearly not entitled to an assignment of the judgment recovered against Ridgely, Wilson and Suit, and to execution thereon, notwithstanding they may have satisfied the said judgment. To entitle a surety to an assignment and execution against his co-sureties under section 7, it is incumbent upon him not only to satisfy the judgment, but to pay the *whole amount* of it, as has been decided by this Court at its present term, in the case of *McKnew, and others vs. Duvall,* 45 *Md.,* 501. If George W. Wilson has *satisfied* the judgment in this case, that is, *paid the balance due upon it,* he is entitled to an execution against his *prin-*

*cipal,* but *not* against his *co-sureties,* for it appears that he did not pay the *whole* debt due on the judgment. He cannot however, join with the administrators of his co-surety, even if they were also entitled to an assignment and execution, for the assignment is not to them *jointly,* but one-half of the judgment amounting to $1042.06, was assigned to each of them. The joinder is therefore fatal to the attachment in this case.

It was also objected, that an attachment will not be maintained which has been levied upon funds which a person has in his hands as a public officer, and it is claimed that the attachment in this case was properly quashed for this reason. This principle was held by this Court in the case of the *Mayor and City Council of Baltimore, Garnishee of Brashears vs. Root,* 8 *Md.,* 100 *and* 101. In that case Root caused an attachment to be laid upon funds in the hands of the City Register, which he held as salary of Brashears, a policeman, and while the question in that case was, whether the salary of a municipal officer was liable to attachment, it clearly appears from the opinion of the Court, that no attachment laid in the hands of a public or municipal officer would be maintained, for it quotes with apparent approval from the opinion delivered by Mr. Justice SARGENT, in the case of *Balkly vs. Eckert, et al.,* 3 *Barr's Reps.,* 368, in which he says, that "great public inconvenience would arise if money could be thus arrested in the hands of officers, and they be made liable to all the delay, embarrassment and trouble that would ensue from being estopped in the routine of their business, compelled to appear in Court, employ counsel and answer interrogatories, as well as take care that the proceedings are regularly carried on. If a precedent of this kind were set, there seems no reason why the State or *county treasurer* or other fiscal officers of the Commonwealth, or of municipal bodies, may not be subjected to the levying of attachments, which has never

been attempted nor supposed to come within the attachment law." Though the provisions of the attachment laws of this State are very broad, we cannot believe that they were ever intended to authorize attachments to be laid upon funds in the hands of State or municipal officers as such, and thereby impose upon them and the public service such annoyances, inconveniences and interruptions as are described by Mr. Justice SARGENT. But there is nothing to show in this case that the funds attached in his hands were held by him as *county treasurer*. If such be the fact, and the money in his hands is a surplus of the sale for taxes of the land assessed to Ridgely for non-payment of taxes, it is clear the attachment cannot be maintained if that fact be proved.

It follows from what we have said that the attachment was properly quashed, and the judgment appealed from will be affirmed.

*Judgment affirmed.*