## H. P. DALE, ADMINISTRATOR, vs. HULDAH JANE BRUMBLY.

*Money in Custody of Court Not Liable to Attachment.*

The proceeds of a policy of life insurance were deposited with the Clerk of an equity Court in the course of a proceeding relating to its distribution. After the ratification of an auditor's account directing the payment of a part of the money to the defendant, the plaintiff issued an attachment on a judgment against the defendant and laid the same in the hands of the Clerk of the Court. *Held*, that the attachment should be quashed because the money so deposited was in the custody of the Court and not liable to attachment.

Appeal from the Circuit Court for Wicomico County (PAGE, C. J., and HOLLAND, J.)

The cause was argued before MCSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*James E. Ellegood,* for the appellant.

*Robert P. Graham* (with whom was *N. T. Fitch,* on the brief ), for the appellee.

JONES, J., delivered the opinion of the Court.

In this case it appears that the appellee is the widow of William Brumbly and as such widow became entitled to a share in the proceeds of an insurance upon the life of the said William Brumbly in the Improved Order of Heptasophs. This insurance money was, in the course of equity proceedings, affecting its distribution, in the Circuit Court for Wicomico County, by an order of that Court deposited with the Clerk thereof. The appellant held a judgment against the said William Brumbly and the appellee to the amount of $878.30, with interest from July 3rd, 1894, and costs. In the progress of these equity proceedings in which the order of

the Court was passed for the deposit of the money above re-
ferred to an auditor's account was stated in which there was
distributed to the appellee the sum of $922.88. This audit-
or's account was ratified by the Circuit Court for Wicomico
County on the 10th day of April, 1903; and on the following
day, April 11th, 1903, the appellant had issued upon the
judgment held by him against the appellee and her deceased
husband, an attachment and procured the same to be laid in
the hands of the Clerk of the Court, James T. Truitt, to bind
the sum of $922.88 awarded by the auditor's account to the
appellee. The order of Court ratifying the auditor's account
was in these words: "The above audit and distribution is
hereby ratified and confirmed and the Clerk of this Court is
directed to pay over the fund accordingly, dated April 10th,
1903," and was duly signed by the Judge. Upon motion of
the appellee through her counsel, and after answer to the
said motion by the appellant and hearing upon an agreed
statement of facts, in substance the same as those herein set
out, the Court below, on the 6th of July, 1903, quashed the
attachment issued against the appellee and gave judgment for
her for costs. From such judgment this appeal was taken.

Upon behalf of the appellee it is claimed that at the time
of the attachment laid the money attached was *in custodia
legis* and exempt from attachment. It is not disputed, as we
understand, that money paid into Court, as the funds in this
case were, pending the adjudication of questions made as to
who were entitled to be paid the same, cannot be attached.
This was enunciated as the law in the case of *Farmers Bank
of Del.* v. *Beaston*, 7 Gill & John. 421 (see p. 428), and we
conceive that to be settled. It is contended on the part of the
appellant that this principle or rule of practice does not apply
in the circumstances of this case because after the rights of
the parties had been adjudicated as respected the fund in
Court, the shares of the several parties in interest ascertained
and fixed; the auditor's account by which this was made to
appear ratified; and the Clerk had been directed to pay out
the money accordingly, the share of any distributee of the

fund is liable to attachment as if the funds were in the hands of a trustee in equity under a like state of facts. In the case of *Mattingly, Receiver, &c.*, v. *Grimes, Assignee, &c.*, 48 Md. 102, where real estate was sold by a trustee under the decree passed in the cause, and an auditor's account, distributing the funds had been stated and ratified; and an attachment was laid in the hands of the trustee to affect the share of one of the distributees in the fund it was held expressly that the funds were not liable to the process of attachment because they had, prior to the attachment, been paid into Court under an order to that effect.

It, then, comes back to this—where was the custody of the fund in controversy here when the attachment in this case was laid? To this there would seem to be but one answer. The custody was certainly with the Court up to the time of it's direction to the clerk to pay it out. Such direction to the clerk did not and was not meant to change the custody of the fund. Any particular part of the fund that the clerk was to pay out was not separated from the whole fund until it was actually being paid over. Until then it was not distinguishable from the whole fund as respected the custody. The direction to the clerk to pay out the fund did not put it into his possession and control further than it had been prior to such direction. He was to pay it out from the custody in which it was. In other words he was merely, figuratively speaking, the hand of the Court. He may be likened to the official of a bank who, upon the authorization either general or special, of the bank pays out money to a customer who presents a check indicating the amount to be paid. The money is paid from the custody of the bank and the custody is with the bank until the money paid out is actually segregated from the general funds therein and paid over. The funds to be distributed in a case like this are not held and distributed as are those in the hands of a trustee for a like purpose; and which are paid out under the authority of a decree or decretal order which the Court itself cannot change except in some recognized mode of legal procedure. We can not doubt the

authority of the Court in such a case as this to recall, if it sees fit, any authorization given to the clerk to pay out the money and direct the payment in some other mode or by some other agent; or in case of the temporary disability of the clerk by sickness, or his temporary absence, if it best served the convenience of parties in interest, to recall the direction to the clerk to pay and direct another mode of payment. We must hold that at the time of the laying of the attachment in this case the money attached was in Court and not liable therefore to the process.

But more than this, the clerk was a public officer and while the duty he was, in this case, performing in respect to the funds in question, is not specifically defined in the law as one of his official duties, yet it was by reason of his relations to the Court as a public officer that the duty was imposed upon and assumed by him. The case is, therefore, clearly within the reason of the law which exempts funds in the hands of public officers, if we assume that here the funds in question were in the hands of the clerk, from the process of attachment. In the case of *Wilson et al., Admrs.,* v. *Ridgely et al.,* 46 Md. 235, it was held that an attachment laid in the hands of the Treasurer of Prince George's County was properly quashed on the ground of his being a public officer, if it were shown that the funds attached were held by him as treasurer. The law creating the office of treasurer for that county provided (sec. 49, Art. 16, Pub. L. Laws as enacted by the Act 1872, ch. 294), that upon a sale of property being made by the treasurer to enforce the payment of taxes he should, out of the proceeds of sale pay the amount of taxes due, &c., "and to pay surplus, if any, to the owner thereof." The attachment in the case was laid in the hands of the treasurer to affect the surplus of the proceeds of sale of certain real estate sold by him for the payment of State and county taxes. The Court there adopted the reasons for exempting public officers from the process of attachment given by Mr. Justice Sargent in the case of *Balky* v. *Eckert et al.,* 3 Barr's Reps. 368, as follows:    That "great public inconvenience would arise if

money could be thus arrested in the hands of officers, and they be made liable to all the delay, embarrassment and trouble that would ensue from being estopped in the routine of their business, compelled to appear in Court, employ counsel and answer interrogatories, as well as take care that the proceedings are regularly carried on. If a precedent of this kind were set, there seems no reason why the State or County Treasurer or other fiscal officers of the commonwealth or of municipal bodies, may not be subjected to the levying of attachments, which has never been attempted nor supposed to come within the attachment law." This reasoning most clearly applies to the position of the Clerk of the Court in a case like this.

It must be conceded that counsel for appellant has produced authorities which are not in harmony with the foregoing views. See *Dunlop* v. *Patterson Fire Ins. Co.*, 74 N. Y. 145; *Dunsmore* v. *Ferstenfeldt*, 88 Cal. 522. To follow these, however, would place us in conflict with the governing principle of the decisions of our own Court to which reference has been made. It will be unnecessary to discuss other questions suggested in the argument and the briefs of counsel since what has been said disposes of the appeal in this case. In addition to this the facts appearing in the record are not sufficient to clearly or distinctly present such questions. The judgment of the Court below will be affirmed.

> *Judgment affirmed with costs to the appellee.*

(Decided January 15th, 1904.)