# THE MAYOR AND COUNCIL OF ROCKVILLE, MARYLAND *v.* RANDOLPH

[No. 54, September Term, 1972.]

*Decided November 14, 1972.*

The cause was argued before MURPHY, C. J., and McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Roger W. Titus, City Attorney,* with whom was *Vincent E. Ferretti, Jr., Assistant City Attorney,* on the brief, for appellant.

*Robert S. Bourbon* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

This dispute was hatched when the chancellor, Barrick, J., in November 1971, ordered the appellant (Rockville) to deduct $15 per week from the salary of James Gross. He further ordered that checks therefor be made payable to the appellee (Ellen) and delivered to the "Office of the Circuit Court Investigator for Montgomery County." Ellen had instituted, in 1965, a "Paternity Proceeding" pursuant to the provisions of Code (1966 Repl. Vol.), Art. 16, §§ 66A-66P. Gross had admitted he was the father of Ellen's daughter Brenda Lee and he had acknowledged his obligation to support her. The chancellor ordered him to pay Ellen $10 per week. By Novem-

ber 1971 Gross, having become woefully delinquent in his payments, was haled into court once more. He seems not to have objected to Judge Barrick's order requiring Rockville to deduct the payments from his salary. Rockville sees it differently.

Styling itself the "garnishee" of Gross, Rockville moved to quash the "attachment" for the reason that "funds in the hands of an officer of a municipal corporation are not liable to attachment." On 3 March 1972 the matter came on for a hearing before the chancellor, Shure, J. He concluded "that if the Legislature had intended to exclude the cities of this state from cooperating in payment to children of their employees it would have so stated." Rockville has appealed from his denial of its motion to quash.

Rockville clings, for support, to *Mayor and City Council of Baltimore v. Root,* 8 Md. 95, 63 Am. Dec. 692 (1855). The chancellor's order, it insists, "is clearly in conflict with *Root* and its progeny." [1] Ellen, on the other hand, says authority for the order will be found in Chapter 154 of the Laws of Maryland of 1970. Ellen, of course, is a nominal party; the taxpayers are the real appellees.

In *Root* Judge Eccleston said, for the Court:

> "It has been repeatedly held, that money due by the government to its officers or agents for services rendered by them as such, whilst it remains in the hands of the government or in the keeping of its disbursing agents, is not liable to be attached or seized by the creditors of those having such claims upon the government. This is certainly true in regard to those who hold appointments directly from State authority. The opposite theory would be calculated to produce serious interruptions in the course of public business, and hinder and delay, if not entirely

---

1. To mention a few: *Wilson v. Ridgely,* 46 Md. 235 (1877); *Keyser v. Rice,* 47 Md. 203 (1877); *Dale v. Brumbly,* 98 Md. 468, 56 A. 807 (1904); *Hughes v. Svoboda,* 168 Md. 440, 178 A. 108 (1935).

prevent, in some instances, the accomplishment of very important measures, depending for their successful termination upon the prompt and regular supply of the funds on which the officers or agents have to rely.

\* \* \*

". . . Mr. Justice Sergeant . . . [said for his court] [2] 'Great public inconvenience would ensue if money could be thus arrested in the hands of officers, and they be made liable to all the delay, embarrassment and trouble that would ensue from being stopped in the routine of their business, compelled to appear in court, employ counsel, and answer interrogatories, as well as take care that the proceedings are regularly carried on, and bail to return duly given.' " *Id.* at 100-101.

Code (1971 Cum. Supp.), Art. 16, § 66H, as amended by Chapter 154 [3] of the Acts of 1970 reads as follows:

"(a) If the finding of the court or jury, as the case may be, be against the defendant alleged to be the putative father, the court shall pass an order declaring the defendant to be the father of said child and providing for the support and maintenance of the child. Such order shall specify the sum to be paid by the defendant weekly or otherwise until the child reaches the age of 21 years, dies, marries, or becomes self-supporting, whichever event first occurs; provided, that in any case where said child, having reached 21 years of age, is destitute of means and unable to support himself by reason

---

2. *Bulkley v. Eckert,* 3 Barr 368.
3. The title is as follows:
"AN ACT to repeal and re-enact, with amendments, Section 66H (a) of Article 16 of the Annotated Code of Maryland (1966 Replacement Volume), title 'Chancery,' subtitle 'Paternity Proceeding,' . . . to provide that the court may order a lien on the wages of a defendant in a paternity proceeding . . . ."

of mental or physical infirmity, the court shall have power to require payments to be made or continued during the continuance of such mental or physical infirmity. *The Court may order a lien upon the earnings of the defendant in the amount so specified and the employer is required to deduct that amount as soon as notified by the Court. All such deductions are to be paid directly by the employer to the recipient designated by the Court.* In addition to providing for the support and maintenance of the child, the order also may require the defendant to pay all or any part of the mother's medical and hospital expense for her pregnancy, confinement, and recovery, and for the funeral expenses if the child has died or dies; and in addition thereto, may award counsel fees to the attorney representing the complainant or petitioner. Costs shall be awarded as in other civil cases in accordance with Rule 604 of the Maryland Rules of Practice and Procedure; provided, that the court, in its discretion, may order that all or any part of the costs shall be paid by the county or City of Baltimore, as the case may be, where the proceedings were instituted." (The italicized language is the amendment.)

When it enacted the Paternity Proceedings sections (66A-66P) of Article 16 the General Assembly declared its conviction

". . . that the State has a duty to ameliorate the deprived social and economic status of children born out of wedlock and that the policies and procedures as contained in this subtitle and in § 66 of this article relative to establishing the paternity of such children, determining who shall have their custody or guardianship and who shall be charged with their maintenance and support are socially necessary and desirable,

having as their threefold purpose (1) the promotion of the general welfare and best interests of such children by securing to them, as near as practical, the same right to support, care and education as legitimate children; (2) the imposition upon both parents of such children the basic obligations and responsibilities of parenthood and (3) *the simplification of procedures.* (1963, ch. 722, § 1.)" (Emphasis added.)

In *Shelley v. Smith,* 249 Md. 619, 630, 241 A. 2d 682, 688 (1968), we observed:

"There is little doubt that in recent years public policy in respect of problems arising out of illegitimacy has undergone a change. While it is true, as the report of the governor's commission will show, that most of the public's interest and concern has been generated by the increasing number of illegitimates receiving public welfare monies, nevertheless, the new mechanism [Code, Art. 16, §§ 66A-66P] which has been provided for determining paternity is comprehensive and reasonably precise and it seems to us to make little difference that *its main purpose is the shifting of some of the burden of financial support of illegitimates from the taxpayer to the father.*" (Emphasis added.)

Perhaps, at this point, it would be well to observe that, in 1962, the electorate amended Section 38 of Article III of the Constitution of Maryland to read as follows:

"No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction . . . for the support of a wife or dependent children, *or for the support of an illegitimate child or children,* or for alimony, shall not constitute a debt within the meaning of this section." (The italicized language is the amendment.)

Rockville seems to assume that an affirmance of the chancellor's order will scuttle *Root* and drown its progeny. We do not see it quite that way. The order of 11 November 1971 was not an attachment within the meaning of the *Root* cases and the Maryland Rules (F1 *et seq.*, and G40 *et seq.*). Without such an attachment there can be neither garnishment nor a garnishee. Rules G47 and G52. Here we have not a creditor in pursuit of the collection of a private debt, but a superior apparatus of government soliciting an order of court directing an inferior apparatus to hand over the part of money due an employee which is not a debt but an obligation to his dependent, absent the payment of which the superior apparatus must pay out of public funds a like amount to the employee's dependent. We have said on a number of occasions that cities and counties are but local divisions of the state. Every municipal corporation remains a creature of the state and it is subject to absolute control by the Legislature. *Cotham v. Board of County Comm'rs for Prince George's County,* 260 Md. 556, 562, 273 A. 2d 115 (1971) ; *Mayor and City Council of Baltimore v. Concord Baptist Church, Inc.,* 257 Md. 132, 139, 262 A. 2d 755 (1971) ; *Neuenschwander v. Washington Suburban Sanitary Comm'n,* 187 Md. 67, 74, 48 A. 2d 593 (1946). We see little difference, if indeed there is any difference, between the situation before us and a direction by the state to a municipality to withhold a predetermined amount of the salary of each of its employees and hand it over to the Comptroller to be credited against the income tax liability of the individual.

Rockville makes much of the "great public inconvenience" cited in *Root.* It seems to us that, in the world of today, this notion has little validity in situations such as the one before us. More than a quarter of a century ago, in *Mugford v. Mayor and City Council of Baltimore,* 185 Md. 266, 272, 44 A. 2d 745 (1946), we said:

> "If a City employee voluntarily asks the Central Payroll Bureau to deduct from wages

due him and remit the same to a person, partnership, or corporation, reserving to himself the right to discontinue such payments in the future, it would seem that the City could comply with the request, provided it is permitted by the general regulations applicable to the Central Payroll Bureau. The record shows that the City has extended a similar privilege to all its employees in regard to certain items, such as subscriptions to War Loans, the Red Cross, pensions and charitable funds of various kinds. This is a matter of policy."

It is most unlikely that compliance with the chancellor's order will require the Rockville officers to "be stopped in the routine of their business, [to be] compelled to appear in court, [to] employ counsel, and [to] answer interrogatories, as well as [to] take care that the proceedings are regularly carried on, and bail to return duly given." They could hardly be put to any more hindrance, "delay" and "trouble" than would be involved in making deductions for the withholding for income taxes, the United Appeal, and items similar to those mentioned in *Mugford*. Indeed, we are far from being persuaded that the inconvenience involved in taking $15 out of Gross's salary each week would be anything more than minimal.

We do not think the Legislature, by the enactment of Chapter 154, *supra*, intended to insulate the already large and evergrowing battalions of laborers in the public's vineyards against the power of the courts to conserve the public's funds by enforcing the obligation of fathers of illegitimates to support their get. It will be recalled that one of the avowed purposes of the 1963 statute was "the simplification of procedures." If we have misread the intention of the Legislature it has the means to set things to rights.

It must not be supposed that we have attenuated *Root*

or the cases which followed it. Today's holding must not be thought to go any further than the facts presented.

*Order affirmed.*
*Costs to be paid by the appel-*
*lant.*