McFARLAND CARRIAGE CO. v. SOLANES et al. (JAMES, Intervener).

(Circuit Court, E. D. Louisiana. March 2, 1901.)

BANKRUPTCY—SUIT TO RECOVER FUND FROM TRUSTEE—RIGHT OF LIEN CLAIMANT TO INTERVENE.

An action was brought in a circuit court against the trustee of a bankrupt to recover personal property of which defendant had taken possession as a part of the bankrupt's estate, but of which plaintiff claimed to be the owner. The court found plaintiff to be the owner of the property, and rendered judgment for its recovery. Pending the action defendant had sold a part of the property by order of the bankruptcy court, and with plaintiff's consent. After the judgment he surrendered to plaintiff the remaining property, but refused to turn over the proceeds of that sold; and plaintiff instituted proceedings, by rule to show cause, in the circuit court, to require its payment. Defendant answered the rule, setting up certain claims on behalf of the estate for taxes and insurance paid on, the property, and that the same was subject to a lien in favor of bankrupt's landlord. On a hearing the court dismissed the rule, remitting plaintiff to his remedy in the court of bankruptcy. The circuit court of appeals reversed such decision on appeal, on the ground that plaintiff's ownership of the proceeds of the property sold, as well as the property remaining, was adjudicated by the original judgment, and directed the entry of an order by the circuit court making the rule absolute. After the cause had been remanded, the landlord of the bankrupt intervened, claiming a landlord's lien, under the statute, against the property for rent due prior to the bankruptcy, which he sought to enforce against the fund in the hands of defendant. Held, that such fund, having been received by defendant, in his official capacity, under the orders of the bankruptcy court, was in custodia legis; that such question was not presented to or passed upon by the circuit court of appeals; and that the intervener, not having been a party to the action, was not concluded by the judgment, and was entitled to assert his claim to a lien against the fund.

On Rule to Show Cause.

Denegre, Blair & Denegre, for plaintiff.
Rice & Montgomery, for defendant.
Saunders, Gurley & James, for intervener.

BOARMAN, District Judge. The original suit, still pending, was brought on a rule nisi on the trustee to show cause why a certain fund in his hands as the "trustee of the estate of E. C. Fenner, bankrupt," should not be paid over to the McFarland Carriage Company. The intervention of A. De Gasquet-James, now on trial, is to secure a landlord's lien on that fund. E. C. Fenner was a carriage dealer in New Orleans. On the 26th of May, 1899, he was adjudicated a bankrupt. In June following, Claude D. Solanes was appointed trustee. Fenner turned over to Solanes, trustee, as a part of his estate, a lot of carriages which were then in the storehouse leased, by the bankrupt, Fenner, from the intervener herein, who then held certain unpaid monthly rent notes, against Fenner, for back rent and for the unexpired term of the lease. The McFarland Carriage Company, a citizen of Indiana, claiming to be the legal owner of said certain lot of carriages, and, having made demand in vain on the trustee for the carriages, instituted a suit in the circuit court against "Claude D. Solanes, trustee of the estate

of E. C. Fenner, bankrupt," to recover title to and possession of said carriages. The plaintiff therein obtained a final judgment; the circuit court decreeing it to be the legal owner of the same, and that they were no part of Fenner's estate. During the pendency of that suit, and before a decree therein, for title to the carriages, the bankrupt court, at the instance of the trustee, and with the consent of the McFarland Carriage Company, ordered the trustee to sell some of said carriages. A number of them were sold, accordingly, and the proceeds, $819.50, were deposited, presumably, by the trustee in the depository designated by the bankrupt court to the credit of the bankrupt's estate. After the final decree mentioned herein, in which plaintiff was adjudged to be the owner of the entire lot of carriages, the plaintiff, McFarland Carriage Company, instituted a suit, on a rule to show cause, against Solanes, trustee, why the money for which the carriages were sold should not be paid over to the company. On this rule the circuit court entered judgment as follows: "Dismissing the rule, and reserving to the plaintiff the right. if it be so advised, to institute proceedings in the bankrupt court in this district." On writ of error to the circuit court of appeals, this judgment dismissing the rule was reversed. 106 Fed. 145. After the mandate therefrom was sent down, the intervener, claiming that the lot of carriages sold in pursuance to the bankrupt court's order were, with the consent of said company, on the premises leased from him by Fenner, on the date he was adjudged to be a bankrupt, instituted his intervention to recover a lien on the said proceeds for all the unpaid rent evidenced by the several lease notes.

The articles in the Revised Civil Code relied upon for the lien claimed are as follows: Article 2705 provides, "The lessor has for the payment of his rent and other obligations of the lease a right of pledge on the movable effects of the lessee which are found on the property leased." Article 2707 provides, "This right of pledge affects not only the movables of the lessee, and under-lessee, but all those belonging to third persons when their goods are stored in the house or store by their own consent, express or implied." The McFarland Carriage Company resists the claim made by the lessor on the said fund: First, because the fund is not now, or has not been, in custodia legis; second, that under the law plaintiff is not entitled to be paid out of the fund on any of the lease notes; third, that the trustee represents the mass of creditors in the management of the bankrupt's estate, but they (the creditors) may and must for themselves, in their own right, pursue the property in the prescribed period, or lose their privilege.

The contention of defendant's counsel as to the property or fund not being in custodia legis is founded, as it appears from his argument, largely on what he says is the legal import of the language which counsel quotes from the opinion of the court of appeals reversing the circuit court's judgment on the motion to show cause, which quotation is as follows:

"In addition to the facts above recited from the transcript of the record, we learn from the brief of counsel submitted on behalf of the defendant trustee that pending a decision of the suit (intermediate the filing of the petition

and the decree), and with the consent of the plaintiff, sales were made of the goods claimed, and the trustee retained the proceeds of the sale of the goods to respond to the final judgment of the court. * * * It thus appears that the defendant trustee did not receive this fund as the trustee of the bankrupt, but as trustee of the parties to the present suit, and to respond to the final judgment of the court therein."

Counsel contends that this statement appearing in the court of appeals opinion has the legal effect, in the pending suit, of res judicata on the issue as to whether or not the fund in question is in custodia legis. He further contends that the circuit court of appeals, in reversing the circuit court's judgment on the rule nisi, passed on that issue finally, and adversely to the pending claim of the intervener, and the question now of custodia legis is no longer an open one. A transcript of the record, showing the case that was tried, on the rule nisi, in the circuit court, between the carriage company, plaintiff, and Solanes, "trustee of the estate of E. C. Fenner, bankrupt," as defendant, shows all the evidence which was administered therein by either side, and is now before this court as a part of intervener's evidence. There does not seem to be anything in that transcript to show that the trustee, Solanes, held the fund otherwise than in his official capacity, or that any issue of law or fact pertaining to the matter as to whether or not the proceeds in question were or were not in custodia legis was material to the determination of the claim made by the McFarland Carriage Company for said proceeds on the said trustee. It seems from the evidence in the said transcript that the matter heard and passed upon therein by the circuit court was limited to the question as to who was the legal owner of the carriages or proceeds thereof, and there was no issue therein as to where the fund then was, or as to in what capacity it was then held by Solanes. The facts not disputed show that the carriages were scheduled as the bankrupt's property, and that as such property they were turned over to the trustee, who took possession of them and subjected them to his official possession, as he did other property belonging to the bankrupt; that subsequently the carriage company made demand for their property on the trustee of the bankrupt, which was refused by him; that the trustee asked for and received an order from the bankrupt court to sell certain carriages at private sale, and in the court's order there was reserved all the rights of interested parties over the proceeds (then in the bankrupt court's depository) of the sale. It appears, too, that the carriage company consented, on certain conditions, for the trustee of the bankrupt to make the sale; that the proceeds of the sale are now in the bankrupt court's depository, to the credit of the trustee; that plaintiff, the landlord, now intervening in this suit, was not a party to any of the proceedings heretofore had in the circuit court. On this statement of undisputed facts, it appears that the carriages, even though they did not belong to the bankrupt at the time of the adjudication, were then, as the proceeds of said sale are now, in the legal custody of the trustee of the bankrupt; that suit was instituted against him, as the trustee of the bankrupt, for the recovery of the carriages. It appears, too, as a legal presumption, that the McFarland Carriage Company consented that Solanes,

as the trustee of the bankrupt, should sell the carriages and hold the proceeds thereof as such trustee; that Solanes, having the same in his possession as an officer of the court, could not have delivered them to the McFarland Carriage Company except upon a judicial order, nor could he have sold them except on authority of the court for which he held them. Certainly he came into possession of them in his official capacity as the bankrupt's trustee. His possession was not that of a trespasser, but it was the possession of the bankrupt court, to whom the surrender of the bankrupt's estate had been made.

Notwithstanding the suggestion contained in the circuit court of appeals' opinion to the effect that Solanes held the fund in his personal relation to the parties, and not in his official relations, it must be conceded, I think, that a trustee becoming possessed of property turned over to him by the bankrupt, and listed in the schedule of the bankrupt's assets, could not, on his own motion, change his official relations to the property in his possession so as to hold the proceeds of the sale made under judicial authority as an individual trustee, in a personal sense, of the parties to that suit. Considering the issues involved in the rule nisi, I do not think the trial court would have been authorized to admit evidence on either side to show that Solanes consented to disclaim or to forego the legal possession of the carriages or fund, or of his official relations to either the carriages or fund, and to assume merely personal relations, while holding the fund, between the parties affected by the court's order to sell the property. Considering all the proceedings preliminary to the adjudication, inclusive of the schedules showing the bankrupt's estate which was surrendered to the trustee, the law will presume that Solanes, at the time the rule was heard in the circuit court, held the proceeds of that sale as the trustee of Fenner, the bankrupt. This presumption, in the absence of proof to the contrary, shows the legal status of the fund. In fact, the plaintiff in the rule nisi, the carriage company, demanded the carriages, and afterwards the money, from Solanes, trustee, sued Solanes, trustee, for the proceeds, and, it seems, consented that a sale be made by Solanes, trustee. It clearly was not permissible, in law, to either party to that rule, to show that Solanes held the fund otherwise than in his official capacity. The rule nisi instituted by the carriage company was, so far as its purposes are disclosed in the rule, limited to the recovery, as against Trustee Solanes, of the proceeds of a judicial sale, which were then, presumably, in the bankrupt court's depository. The defendant trustee therein put at issue, under his sworn answer, other issues than the matter as to the legal ownership of the carriages. Among such matters, he alleged that the lessor of the store in which the carriages were at the time of the adjudication held unpaid claims for rent against the estate; that the law imposes a lien in the landlord's favor, for a pro rata part of the unpaid rent, on the carriages on his premises. Such issues presented in the answer of the defendant, it seems, by the judgment of the circuit court, were passed upon favorably to him on the trial of the rule. It was the purpose of the trial court in dismissing the rule that the fund should be held

for a hearing in concurso in the bankrupt court. But those issues, and the favorable decision, of the trial court upon them, to Solanes, trustee, seem to have been disregarded in the decision of the circuit court of appeals, leaving the claimants, for such liens on the carriages without a day in court, unless, notwithstanding the decision of the circuit court of appeals, the intervener herein may have a right to a trial in this suit on his claim for a lien on the fund now in the depository of the bankrupt court. If the contention of the counsel for defendant upon the issue as to the fund not being in custodia legis is well founded in fact and law, it may be that the intervener in this suit has lost his lien upon the said fund as the result of a final decision of a court in which he was not a suitor, which, operating as it does directly and peremptorily on the trustee, takes from the jurisdiction of the bankrupt court a fund in its judicial possession, upon which fund, under the state of case herein submitted, he is entitled to a landlord's lien. All of the material evidence heard on the rule nisi was directed to the purpose of enabling the trial court to determine the legal ownership of the proceeds from a judicial sale of the carriages. To determine that single issue, it was a matter of no material importance to the plaintiff as to how or in what capacity Solanes then held the money. There was no testimony on the issues tendered by the respondent in the rule, except his sworn answer stating that he held the money in his official capacity as trustee of the bankrupt's estate; that he claimed under oath that the fund was in custodia legis. There seems to have been no evidence to the contrary. On this state of case, I think it is fair to assume that Solanes was then, as he is now, holding the fund as the trustee of the bankrupt's estate. A thing is in custodia legis when it is shown that it has been and is subjected to the official custody of a judicial executive officer in pursuance of his execution of a legal writ. The officer holding such a thing cannot, after he has made his return on the writ, release it on his own motion to any one claiming title to the thing. The status of the thing so seized, as to third parties, is fixed by his return, and its status can be changed only by an order of the court. If a defendant on whom a marshal is executing an attachment writ turns over movables, the ownership of which he claims, to such officer, the marshal, after he has made his return to the court showing that such things were subjected to his custody in pursuance of his execution of the court's writ, is dispossessed of any power to treat with the parties to the suit in relation to the thing being so held by him in any other than his official capacity. The thing so seized by him, without reference to the question as to whether or not the defendant turned over the property of another person, will remain, by operation of law, in custodia legis until it is withdrawn from such custody by the order of a competent court.

Considering the state of case now presented on behalf of the intervener, I do not think the question of custodia legis, vel non, of the said proceeds, could have been an issue conclusively passed upon adversely to him by the appellate court. It appears on reading the opinion of the appellate court that the proceeds of the sale which

were claimed by the carriage company were treated as representing and standing instead of the carriages, to which title in the carriage company had been vindicated in the preceding suit, wherein the circuit court gave a final judgment in favor of the carriage company adverse to Solanes, trustee. The court of appeals, notwithstanding part of the carriages had been sold, and the money placed by the trustee in the court's depository, and notwithstanding the issues tendered in the trial court on behalf of the respondent in his sworn answer, did not think it advisable, under their view of the state of case, to give them favorable consideration, or to direct that the plaintiff, who recovered title in the carriages and to the proceeds, which stood in lieu of a part of the carriages sold under the bankrupt court's order, should go with the decree of the circuit court (responsive to the mandate of the appellate court) to the bankrupt court of this district for the satisfaction of the final judgment, vindicating its right to the proceeds of the judicial sale.

It appears from the final decree of the circuit court on the rule nisi, which decree is now executory, that the execution thereof responsively to the mandate of the circuit court of appeals will operate directly on the proceeds of the judicial sale made under legal process from the bankrupt court; that Solanes will have to respond to the final judgment in the capacity in which he was sued on the rule (that is, as "the trustee of the estate of Fenner, bankrupt"); that in so responding he will have to pay over to plaintiff in the rule such said proceeds as are now in the bankrupt court's depository to the credit of the said estate; that said trustee will have to pay from the funds of the estate all costs incurred in the suit against him in his official capacity. Notwithstanding such conditions follow the decision of the circuit court of appeals, it is contended that it was the judicial purpose of that court to decide against all parties, including this intervener, who may have or claim an interest in the fund; that Solanes, though sued in his official capacity, held the said proceeds at the time the rule was filed, and holds the same now, not as the trustee of the bankrupt, but as a mere stakeholder for all parties to the rule. This contention is made, as to the legal effect of the language quoted by counsel from the court of appeals opinion, in the face of the fact, which seems to be conceded in argument, that there was no evidence in the trial court tending to show that his relations to the fund in question were other than those of an administrator whose legal duty it is to hold the same for the court appointing him until it is legally withdrawn from judicial custody. It is not contended that the proceeds may not be legally withdrawn under an executory writ responsive to the said mandate. Under frequent judicial interpretations of the bankrupt law respecting the subject-matter of this suit, I think, after the date upon which Fenner was adjudged a bankrupt, the said carriages ceased to be on the leased premises either with the express or implied consent of the owner thereof, and the intervener is not entitled to a lien after the date of such adjudication. Conceding that the rule of law stated in the third proposition is well founded, it is not applicable to the state of case now submitted. The intervener is not

in court at the instance or with the aid of the trustee, Solanes. He is endeavoring to invoke for himself a day in court to prosecute his claim for a landlord's lien on the said fund. In support of this proposition authorities are cited which show conclusively that the trustee, in responding to the rule nisi, could not at his own instance have set up on the trial of the rule nisi a claim on behalf of this intervener for a lien on the proceeds in his hand. It follows, I think, if Solanes held the fund in question as a stakeholder in a personal sense, the fund was not in custodia legis, and the trial court, in passing merely on the ownership of the fund, was without jurisdiction to allow him in that trial to have his day in court to vindicate his claim for a lien. The question now presented on this intervention, however, is not as to the difficulties which may be in the way of executing the decree of the circuit court responsive to the said mandate; nor do I refer to the judicial views or conclusions expressed in the opinion of the court of appeals with a view of discussing difficulties suggested by counsel as to matter of practice in reaching or subjecting the fund by direct execution, which is shown to be in the bankrupt court's depository to the credit of the bankrupt's estate. Such difficulties as are now suggested by counsel, it must be presumed, were duly considered by the court of appeals in giving direction as to how the circuit court should proceed in making effectual the terms of the mandate. The present question is free from the difficulties suggested. It is limited to the single matter as to whether or not the said proceeds are in custodia legis. On the state of case submitted, I think the fund is in custodia legis. Under the articles of the Civil Code cited herein, I think the intervener should be paid as a landlord entitled to a lien on the fund up to the date of the said adjudication. It may be there was property of the bankrupts or property of third persons other than that of said carriages on the leased premises on the day of the adjudication, upon which the law will impose the duty of making a pro rata contribution to the payment of the lease notes for which a lien is now adjudged in favor of the intervener. If an issue of this kind arises, it will have to be dealt with in the court where such an issue may jurisdictionally appear.