W. H. ADAMS v. W. H. BURNS.

172 So. 75.
Division A.
Opinion Filed June 29, 1936.
Rehearing Denied September 10, 1936.

686

*Charles A. Powers* and *Charles A. Powers, Jr.,* for Plaintiff in Error.

*W. C. Johnson, George C. Bedell* and *Chester Bedell,* for Defendant in Error.

BROWN, J.—An action of detinue was begun by W. H. Burns against W. H. Adams on August 24, 1933, by filing a praecipe for summons *ad respondendum.*

The declaration, which was filed September 4, 1933, was the usual statutory declaration, see Section 4314 C. G. L., declaring substantially that defendant did, on July 14, 1933, detain from plaintiff a certain tugboat called the "Vida D," together with certain equipment, valued at $2500.00; a

lighter approximately 20x60 feet, equipped with a 15,000-gallon tank and other equipment, valued at $1200.00; a lighter approximately 22x70 feet, named the "Iwanowski" together with certain equipment, valued at $600.00.

To this declaration, the defendant filed eleven pleas as follows: (1) a plea of not guilty; (2) a formal plea of *non detinet* in the past tense; (3) a formal plea of *non detinet* in the present tense; (4) a formal plea of *non detinet* in both the past and the present tenses; (5) a plea based on the distress proceedings had in the Civil Court of Record wherein the Florida Fish and Produce Company was plaintiff and Jacksonville Machine & Dry Dock Company and W. H. Burns were defendants, raising the question of the jurisdiction of the Circuit Court over the res at the commencement of the action, and showing possession of the property to be in the Sheriff, a third party; (6) a plea similar to the fifth but plead *puis darrien* continuance and being based on the writ of execution and the sheriff's return thereon in the case of Florida Fish & Produce Company against Jacksonville Machine & Dry Dock Company, in the civil Court of Record; (7) a formal plea denying property of the plaintiff in the goods; (8) a formal plea denying property of the plaintiff in the goods on July 14, 1933, and at all subsequent times; (9) a special plea setting up the two-year statute of limitations, Section 5778 C. G. L.; (10) a special plea setting up the two-year statute of limitations, Section 5778 C. G. L., and also setting up the distress writs and the returns of the sheriff thereon in the case of Florida Fish & Produce Company against Jacksonville Machine & Dry Dock Company, in the Civil Court of Record; (11) a special plea *puis darrien* continuance setting up not only the two-year statute of limitations, Section 5778 C. G. L., but also the writ of execution

and the sheriff's return thereon in the case of Florida Fish & Produce Company against Jacksonville Machine & Dry Dock Company in the Civil Court of Record.

Plaintiff's demurrer to the fifth, sixth, ninth, tenth, and eleventh pleas was sustained by the court.

Defendant's motion that he be allowed to refile his amended fifth and sixth pleas was denied by the court.

Defendant's motion that he be allowed to refile his second amended ninth, tenth and eleventh pleas, and an original twelfth plea, which set up the estoppel of plaintiff, W. H. Burns, to bring this action due to his participation in the case of Florida Fish & Produce Company against Jacksonville Machine & Dry Dock Company, in the Civil Court of Record, was denied by the court. Further, in said order, the court of its own motion struck the first plea of not guilty.

Defendant's motion for leave to file a third amended tenth plea as well as an original thirteenth plea, which was a plea in abatement to the effect that the property was lawfully levied upon by the sheriff and had been placed with the Florida Fish & Produce Company as his bailee; that no demand prior to institution of the action had been made on defendant; that the sheriff was still living, was still sheriff and resident within the jurisdiction, was denied by the court.

Defendant made another motion that he be allowed to file his third amended tenth plea by interlineation instanter, which motion was denied by the court.

Defendant made a motion, before trial, to quash the *venire facias* and the special venire. The court denied the motion.

Trial was had upon the issues as made by the pleadings. The case went to trial upon three pleas denying detention

(2nd, 3rd and 4th) and two pleas denying property in the plaintiff (7th and 8th).

After introduction of the evidence, upon hearing the argument of counsel and the instructions of the court to the jury, the jury returned a verdict in favor of plaintiff, in which it valued the "Vida D" at $1,500.00, one of the lighters at $600.00 and the other lighter at $1,000.00; and found that damages due to the detention were $3,213.00.

Final judgment was entered upon the verdict.

Defendant filed a motion for a new trial, a motion in arrest of judgment, a motion for a *venire facias de novo* and a motion for repleader, all of which were denied by the court, on condition that a remittitur of $400.00 on the value of the lighter assessed at $1,000.00 be entered by the plaintiff.

Plaintiff entered the remittitur of $400.00 as provided in the order of the court, after which an amended judgment for plaintiff was entered, to which defendant took this writ of error.

It appears from the record that on June 9, 1933, the Florida Fish & Produce Company, of which W. H. Adams was President, brought a distress action against the Jacksonville Machine & Dry Dock Company, in the Civil Court of Record. An original distress writ was issued and levied upon certain property including the two lighters involved in this litigation. This property being deemed insufficient to meet the amount claimed, an alias writ was issued and levied upon the tug-boat "Vida D." Then a pluries writ was issued not only against the Jacksonville Machine & Dry Dock Company but also against W. H. Burns as defendants and levied on all the property theretofore levied upon. On July 24, 1933, W. H. Burns filed a claim affidavit alleging that the tug-boat "Vida D," which, he alleged,

had been levied on by the sheriff, belonged to him. On August 18, 1933, W. H. Burns filed a defense affidavit swearing that the rent as claimed in plaintiff's affidavit was not due. The distress proceeding came to trial August 21, 1933, and W. H. Burns moved, on technical grounds not here important, to quash the pluries writ and dismiss the cause as to himself, which motion the court granted as to Burns "without prejudice." The court also, on Burns' motion, allowed him to withdraw the claim affidavit that he had filed in the cause. Judgment in that cause was entered in favor of the Florida Fish & Produce Company against the Jacksonville Machine & Dry Dock Company. Execution issued on that judgment September 6, 1933, and was levied upon all of the property which had been levied upon under the distress writs together with certain other personal property. The property was sold at public sale on September 22, 1933. Dan Burns, the brother of W. H. Burns, was the highest bidder, but was unable to raise the money to cover the bid within three days after the sale and, according to agreement between the parties, the property was sold to the next highest bidder at the sale, the Florida Fish & Produce Company, for $1,450.00.

The record further shows that the tug-boat "Reyner" which was later renamed the "Vida D," was manufactured by J. Reyner & Sons, Inc., of Newport News, Virginia, who sold it to J. E. Iwanowski of Jacksonville, Florida, who sold it to W. H. Burns on November 17, 1930. Ownership of the two lighters involved in this litigation was also claimed by Burns. The tug-boat and lighter accounts were kept in the books of the Jacksonville Machine & Dry Dock Company, of which Burns was President, and the ledger of that company, covering the boat and lighter accounts, showed debits of $9,598.52 and credits of $18,491.36, thus showing

an apparent profit to the company of nearly $9,000.00. This was attempted to be explained by plaintiff by saying that it was money advanced by him to the Company on Saturdays to meet payrolls.

The return on the original distress writ showed that the property levied on was placed in the custody of the Florida Fish & Produce Comany, of which W. H. Burns was President. The return on the alias distress writ failed to show that the property levied on was placed in the custody of anyone. The pluries distress writ showed that the property levied on was placed in the custody of W. H. Adams. But the record as a whole satisfactorily shows that the property levied upon was, by the sheriff, placed in the custody of either the defendant Adams or the Florida Fish & Produce Company of which he was president, as the bailee of the sheriff.

Inasmuch as there was evidence to the effect that W. H. Burns was, until sometime in 1933, hauling petroleum products for the Gulf Refining Company with the tug-boat "Vida D" and the two lighters, there was no conclusive showing that the "Vida D" and the two lighters had remained in the possession and control of the defendant in the distress writs for two years in such sort as to permit the defendant in the detinue case to invoke the provisions of Section 5778 C. G. L. But that is not a controlling consideration on this writ of error, as will later appear, nor is the question of the constitutionality of Chapter 16,058 properly presented for our consideration here.

Detinue is, generally speaking, the common law equivalent of a suit in replevin. Phillips Company v. Wagner, 115 Fla. 631, 155 So. 842. While statutory replevin in practice supplanted it, the action of detinue is not, as a matter of law, obsolete in this State. It has never been abolished by

the Legislature. *Per contra,* as pointed out by Professor Crandall, the statutory form for "wrongful detention of property" by practice adopted in replevin, is the identical form set out for detinue in schedule B, form 29, of the English Common Law Practice Act of 1852. See Section 4314 C. G. L. It is therefore probable that the Legislature intended this form for detinue rather than replevin. See Chapter 1096, Acts of 1861. And Circuit Court Rule 70 is a distinct recognition of the action by this Court. Many states, including Alabama, have adopted statutory procedure for detinue cases quite similar to ours for replevin, but with us detinue is a purely common law action. Florida cases involving detinue, directly or indirectly, are Summerall v. Thomas, 3 Fla. 398; Thornton v. Eppes, 6 Fla. 546; Hendry v. Clerdy, 8 Fla. 77.

In order to maintain the action to detinue the *plaintiff must have the right to immediate possession of the property at the time the action is instituted,* the defendant must have been in the wrongful possession of the goods at some time prior to commencement of the action; the goods must be capable of identification and must be in ease at the time the action is brought. The plaintiff may institute the action without giving bond. See Crandall's Florida Common Law Practice 552, 553, 554; IV Minor's Institutes 540. *The gist of the action of detinue is the wrongful detention.* See Crandall's Florida Common Law Practice 553; Bullen & Leake Precedents (3rd Ed.) 311, 728; IV Minor's Institutes 539, 706 (italics supplied); 9 R. C. L. 148 *et seq.;* 18 C. J. 987, *et seq.;* 6 Encyc. P. & P. 643.

The second question is whether plaintiff, at the commencement of his action, had a valid cause of action in detinue in the Circuit Court.

The record shows that in the case of Florida Fish &

Produce Company against the Jacksonville Machine & Dry Dock Company and W. H. Burns, in the Civil Court of Record, valid distress writs were issued and levied upon the property involved in this suit with the exception of a certain Niagara pump. The pluries distress writ was quashed as to defendant W. H. Burns on August 21, 1933; and the final judgment was entered against the Jacksonville Machine & Dry Dock Company on August 22, 1933. Execution issued on that judgment September 6, 1933. On August 24, 1933, plaintiff instituted his action in detinue in the Circuit Court. At that time, final judgment in the case involving this property in the Civil Court of Record had been rendered, but execution had not been issued thereon and the property had not been sold at legal sale, and it was still in the custody of the sheriff under legal process of the Civil Court of Record.

When property is seized under a distress writ and is in the possession and control of the sheriff, it may be considered as *in custodia legis, ex parte* Fuller, 99 Fla. 1165, 128 So. 483, and any interference with that property amounts to contempt of court. Hooker v. Wiggines, 104 Fla. 355, 139 So. 803.

Property once levied upon remains in the custody of the law and is not liable to be taken by another execution in the hands of an officer of another jurisdiction. Hagen v. Lucas, 35 U. S. 400, 9 L. Ed. 470. When property has been seized by an officer of the court under valid process, that property is in the custody and under the control of that court for the time being; and no other court has a right to interfere with that possession unless it has direct supervisory control over that court or unless it has some superior jurisdiction in the premises. Buck v. Colbath, 70 U. S. 260, 18 L. Ed.

257.; Lammon v. Feusier, 111 U. S. 17, 4 Sup. Ct. 286, 28 L. Ed. 337.

The status of property seized by legal process, as to third parties, is fixed by the return thereon, and the status of that property can be changed only by an order of court. Property once placed *in custodia legis* will remain there, by operation of law, until it is withdrawn by order of a competent court. McFarland Carriage Company v. Solanes, 108 Fed. 532.

When a court of competent jurisdiction takes possession of property through its officers, this withdraws the property from the jurisdiction of all other courts, which, though of concurrent jurisdiction, may not disturb that possession; and the court acquiring original jurisdiction is competent to hear and determine all questions respecting title, possession and control of the property. Isaacs v. Hobbs Tire & Timber Co., 282 U. S. 734, 51 Sup. Ct. 270, 75 L. Ed. 645. See also Wade v. Clower, 94 Fla. 817, 114 So. 548, 551.

At the time of the institution of the action of detinue in the Circuit Court, the property sought to be recovered was still under the jurisdiction of the Civil Court of Record, as the property had not at that time been released in any manner from the custody of that court, but continued under the original distress levies and the judgment of the Civil Court of Record; and the Circuit Court was without jurisdiction to proceed as to the property involved.

If the detinue suit had been instituted against the sheriff, or Adams as his bailee, the question would have been substantially the same as here.

Although there is some contrary authority, the better rule seems to be that where the property of one who was not named in the writ has been levied upon under a writ

valid on its face such party cannot maintain an action of replevin or detinue to recover that property while it remains *in custodia legis.* See Peck v. Jennes, 47 U. S. 612, 12 L. Ed. 841; Gumbel v. Pitkin, 124 U. S. 131, 8 Sup. Ct. 379, 31 L. Ed. 374; Ilsley v. Stubbs, 5 Tyng. (Mass.) 280. The possession of the sheriff's bailee or custodian, is the possession of the sheriff; and so the property is still *in custodia legis.* Cushman v. Boston Storage Warehouse Co., 207 Mass. 407, 93 N. Ed. 693; *Ex parte* Fuller (Fla.) *supra;* Kyle v. Swem, 99 Ala. 573, 12 So. 410; Hammock v. Wright, 17 Ala. App. 890, 85 So. 824.

A stranger may not recover, by an action of replevin or detinue, property that has been wrongfully levied upon. For if such an action may be maintained by a stranger whose property is taken in execution out of his possession, on the principle that it is wrongfully taken, it follows that the same action may be maintained for an equally wrongful taking by a stranger from a third person; and so on for an indefinite number of times. However, in such case the right to maintain an action for recovery of the property in specie does not depend upon whether it was wrongfully taken, but on whether it was in the custody of the law; and that once established, possession cannot be disturbed, but the injured party is left to seek his remedy by an action of trespass or trover, or to wait until the goods are sold and bring an action of replevin or detinue for them against the purchaser, in whose hands they cease to be in the custody of the law. Cromwell v. Owings, 7 Har. & J. (Md.) 55; Powell v. Bradlee & Co., 9 Gill & J. (Md.) 220; Buck & Colbath, *supra,* or he may make application to the court having lawful custody of the property to be permitted to come in and set up his claim to the property. See Weiner v. Van Rensselaer, 43 N. J. L. 547.

Our statutes make no provision for any stranger to the writ by which property was seized to replevin that property or to recover it in an action of detinue. Thus detinue was not, under the circumstances of this case, maintainable against the sheriff, the ·sheriff's bailee or the president of the sheriff's bailee.

The fourth question propounded is whether the plaintiff was, by his participation in the suit in the Civil Court of Record between the Florida Fish· & Produce Company and the Jacksonville Machine & Dry Dock Company, estopped or precluded from bringing this action of detinue.

The evidence shows that plaintiff W. H. Burns was aware of the distress proceedings. He filed his claim affidavit to try the right of title to the tug-boat "Vida D," and after proceeding and pleading to the merits of the case, was, upon his own voluntary motion, dismissed as a party "without prejudice." After that trial began, he, by leave of court, withdrew his claim affidavit, and stood by and saw judgment rendered against his Company, the Jacksonville Machine & Dry Dock Company.

The Civil Court of Record was the only court that had jurisdiction of the subject matter, and the only court in which W. H. Burns could, at the time the action of detinue was instituted in the Circuit Court, have interposed a claim to the property. And at that time he could not lawfully have instituted in the Circuit Court, which had no jurisdiction over the property, an action in detinue.· Aside from the question of estoppel, he was therefore precluded from bringing this action.

Under the disposition made of this case, it becomes unnecessary to discuss the two remaining questions presented.

In view of the fact that the property in litigation was, at the time of the institution of the action in detinue in the

Circuit Court, *in custodia legis* and under the jurisdiction of the Civil Court of Record; and as W. H. Burns could not, under the circumstances, resort to detinue, but was confined to asserting whatever rights he may have had in or to the property in the Civil Court of Record, the judgment entered in this case in the Circuit Court must be vacated.

Reversed with directions to vacate the judgment.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

### ON PETITION FOR REHEARING.

BROWN, J.—In the opinion heretofore rendered in this case, it is stated that "A stranger may not recover, by an action of replevin or detinue, property that has been wrongfully levied upon." This general rule has been changed, in certain respects, by statute in some of the States, including our own, as regards the action of *replevin,* as has been called to our attention in the petition for rehearing. Thus Section 5283 C. G. L. provides that, "If any *attachment* shall be levied upon property claimed by any person other than the defendant in attachment, such person may, at his option, *replevy* the same, or interpose a claim in the manner provided in case of execution." (Italics supplied.) And Paragraph 2 of Section 5330 C. G. L. provides that: "Nor shall replevin lie at the suit of the defendant in any execution or attachment to recover goods and chattels seized by virtue thereof unless such goods and chattels are exempted by law from such execution or attachment." But nothing is said in either of these statutes about detinue, and it is detinue we are here dealing with, detinue to recover property levied upon in distress proceedings. In such

latter proceedings, Section 5429 C. G. L. provides a remedy in these words: "Any person claiming any property so distrained may interpose and prosecute his claim for it in the same manner as provided in similar cases of claim to property levied on under execution." But, with us, there are no statutory modifications of the action of detinue, which remains as it was at common law.

As shown by the authorities cited in our opinion in this case, in detinue the plaintiff must have the right to immediate possession of the property at the time the action is begun, and the defendant must have been in the wrongful possession of the property at that time, or some time prior thereto. Though sued as an individual, it appears that Adams in his individual capacity had never been in possession of the property sued for in this detinue action. After the levy, the Sheriff left the property in the custody of the corporation of which Adams was president. Whatever possession the corporation, or its president for it, exercised was as bailee of the sheriff. The corporation's possession, or its president's possession, was the possession of the sheriff. The sheriff's bailee was no more liable in detinue than the sheriff himself, and it is well settled that the sheriff was not liable. The property had been levied on under a writ valid on its face, and was *in custodia legis*. The sheriff's bailee is not liable in detinue to anyone except his bailor. Kyle v. Swem, 99 Ala. 573, 12 So. 410. Where a person is sued individually in detinue, he may defend by showing that he holds the goods as trustee in bankruptcy under the order of the Federal Court. Turrentine v. Blackwood, 125 Ala. 436, 28 So. 95, 82 A. S. R. 254.

But it is contended on behalf of the defendant in error that these principles are obviated or made inapplicable here, because in detinue there is no seizure of the property when

the action is filed, but only after judgment, and if the property cannot then be had, the defendant can satisfy the judgment by paying the value of the property, and the damages for its detention, as fixed by the verdict and judgment. This, however, does not change the requirements of the common law to the effect that the cause of action must exist when the action is instituted. If the plaintiff in detinue is not entitled to immediate possession, or if the defendant is not or has not been in wrongful possession, of the property, when the action is begun, the plaintiff cannot lawfully bring the action; and in the absence of either of these elements, he cannot bring suit, despite this lack, and speculate on the possibility or the probability of these essential elements of the cause of action coming into existence before the case comes on for trial. The true rule, of course, is that all the essentials of the cause of action must exist in full force at the time the suit is instituted. The primary object of detinue is to recover the thing itself, and ordinarily the defendant must have actual possession of the personal property, or controlling power over it, at the time suit is brought; otherwise the plaintiff cannot succeed in his suit. 9 R. C. L. 151. Thus it appears that, aside from the question of conflict between courts, the plaintiff in the detinue suit in the court below was not entitled to recover.

Obviously the holding in the case of Oakes v. Lake, 290 U. S. 59, 78 L. Ed. 168, cited by defendant in error, was not intended to work any change in the rules governing the common law action of detinue. Nor does it necessarily mean that the court would have reached the same conclusion if the action there involved had been an action of detinue. The action there under review was brought under the Idaho "claim and delivery" statute. It was held in that case that the question whether an action will lie in a Fed-

eral Court against a sheriff to take from the possession of the State Court property held by him under a writ of attachment, was not involved in an action under the statute referred to, wherein the plaintiff prayed that he be adjudged entitled to immediate possession of the property or in lieu thereof he recover the specified value of the same, the statute authorizing a judgment for the value where delivery could not be had; that in such a case the Federal Court could dispose of the case as one to recover the value of the property and damages, if the parties unite in the view that delivery cannot be had upon the theory that it would amount to an unwarranted interference with the possession of the State Court. The opinion shows that the court did not intend to overrule any of its previous decisions, a number of which were cited in support of the principles announced in our original opinion. In one of the cases cited, Lammon v. Feusier, the Federal Court said:

"When a marshal, upon a writ of attachment on *mesne* process, takes property of a person not named in the writ, the property is in his official custody, and under the control of the court whose officer he is, and whose writ he is executing; and, according to the decisions of this court, the rightful owner cannot maintain an action of replevin against him, nor recover the property specifically in any way, except in the court from which the writ issued. Freeman v. Howe, 24 How. 450 (65 U. S. XVI 749); Krippendorf v. Hyde (ante, 145). The principle upon which those decisions are founded is, as declared by Mr. Justice MILLER in Buck v. Colbath, above cited, 'That whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered' as in the custody of the court and under its control for the time being; and that no other court has a right to interfere with that pos-

session, unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, or some superior jurisdiction in the premises.' 3 Wall., 341 (70 U. S. XVIII, 260. Because the law had been so settled by this court, the plaintiff in this case failed to maintain replevin in the courts of the State of Nevada against the marshal, for the very taking which is the ground of the present action. Feusier v. Lammon, 6 Nev. 209."

In Buck v. Colbath, cited in our previous opinion, it was held that an action of trespass for damages might be brought against the officer for wrongfully taking the property of a third party under a writ of attachment, without violating this principle. In that case the Federal Supreme Court said:

"This principle, however, has its limitations; or rather its just definition is to be attended to. It is only while the property is in possession of the court, either actually or constructively, that the court is bound, or professes to protect that possession from the process of other courts. *Whenever the litigation is ended, or the possession of the officer or court is discharged,* other courts are at liberty to deal with it according to the rights of the parties before them, whether those rights require them to take possession of the property or not. The effect to be given in such cases to the adjudications of the court first possessed of the property depends upon principles familiar to the law; but no contest arises about the mere possession, and no conflict but such as may be decided without unseemly and discreditable collisions." (Italics supplied.)

We see no reason therefore to recede from the position taken in our previous opinion, which, while we cited only a few cases, is supported by the great weight of authority.

However, the language of the quoted sentence of our former opinion is modified as shown by the first paragraph of this opinion. Petition for rehearing denied.

WHITFIELD, C. J., and Davis, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.