DONALD YOUNG and ELSIE MAE YOUNG v. FRANK STOUT-AMIRE, as Sheriff of Leon County, and as Sheriff *ex-officio* of the Supreme Court of Florida, and HONORABLE J. B. JOHNSON, one of the Circuit Judges of the Circuit Court in and for Leon County.

179 So. 797.
Division B.
Opinion Filed February 22, 1938.
Rehearing Denied March 29, 1938.

536

*William J. Pruitt, Julias F. Parker* and *J. Lewis Hall,* for Petitioners;

*James Messer, Jr.,* and *Whitfield & Whitfield,* for Respondents.

CHAPMAN, J.—On petition for writ of certiorari it was made to appear that Honorable J. B. Johnson, a Judge of the Circuit Court of Leon County, Florida, on November 4, 1937, entered an order directing Frank Stoutamire, as Sheriff, to retain in his possession the sum of $2278.90 for disbursement on an order to be later issued by a court of competent jurisdiction of the State of Indiana. The order

is predicated on a bill of complaint filed by Cary G. Sander and Clara E. Knronhngold against Donald Young and his wife, Elsie May Young, *et al.,* wherein it is alleged, among other things, that Donald Young and wife, Elsie May Young, stole the sum of $5400.00 from plaintiffs in the State of Indiana and immediately left for the State of Florida, when they were arrested and were being returned from Florida to the State of Indiana by the proper authorities for the purpose of answering the charge of larceny of said moneys of plaintiffs; that the sum of $2278.90 was by Donald Young and wife, Elsie May Young, placed with Frank Stoutamire, as Sheriff of the Supreme Court of the State of Florida, to fully secure a bond signed by them, conditioned for the personal appearance of each before the Supreme Court of Florida, to await the outcome of a habeas corpus proceeding, then being considered by said Court to determine whether or not Donald Young and wife, Elsie May Young, should be returned to the State of Indiana from the State of Florida to answer the charge of larceny of said money. Frank Stoutamire, as Sheriff, under an order of the Supreme Court, received said money of and from Donald and Elsie May Young conditioned for their appearance before the Court as the result of the order of the Supreme Court of Florida on the writ of habeas corpus, and for no other purpose.

The appearance bond of Donald and Elsie May Young was further conditioned that the Sheriff of the Supreme Court of Folrida should pay over to William J. Pruitt and Julius F. Parker, attorneys for Donald and Elsie May Young, the said sum of $2279.00 left with or paid to the Sheriff for their appearance, and upon the rendition of a decision by the Supreme Court of Florida, each appeared and were returned to the State of Indiana. There is no allegation in the bill of complaint that the money deposited

with the Sheriff was the same or identical money alleged to have been stolen from the plaintiffs by the defendants. The material portions of the bond signed by Donald and Elsie May Young, and under which the money was left with the Sheriff as security, are, viz.:

"* * * the said Donald Young and Elsie Mae Young now assign, transfer, and set over all their right, title and interest in and to the said $2279.00 to the Sheriff of the Supreme Court of Florida, to be held by him until such time as said Petitioners shall have been presented before the Supreme Court of Florida to abide by its final orders and decrees rendered in the above entitled cause.

"And, when said Petitioners have been presented to abide by the final orders and decrees of the Supreme Court of Florida rendered in the above entitled cause, the Sheriff of the Supreme Court of Florida is herein and hereby directed by the said Donald Young and Elsie Mae Young to pay over the said $2279.00 to their counsel of record, William J. Pruitt and Julius F. Parker, or either of them.

"It is understood and agreed that this assignment is solely for the purpose of posting bond with the said Sheriff of the Supreme Court of Florida, to secure the freedom of the said Donald Young and Elsie Mae Young pending a final determination by the Supreme Court of Florida of the above entitled cause."

The money to secure the appearance of Donald and Elsie May Young was *in custodia legis,* as a matter of law, and its disbursement or release is subject to a subsequent order of the Supreme Court of Florida. Adams v. Burns, 126 Fla. 685, 172 So. 75. The following affidavit was, in part, made by Frank Stoutamire, Sheriff of the Supreme Court of Florida:

"I further certify that in full compliance with the provisions of the bond made by said Petitioners provided for

in the order rendered by the Supreme Court, as aforesaid, the said Donald Young and Elsie Mae Young, each have surrendered themselves to me and I now hold them in my custody under and by virtue of an executive warrant issued by the Governor of Florida and that all conditions of said Petitioners' bonds which provided that 'they shall be present and attend upon the Supreme Court of Florida from day to day and abide all orders and judgments of said Court' have been fully complied with and that they are entitled, therefore, to have and receive immediately the proceeds of funds to-wit, $2279.00, represented in the check from D. C. Coleman, Sheriff, as aforesaid.

"This the 4th day of November, A. D. 1937."

The respondents filed a motion to quash the writ of certiorari on a number of grounds, all of which fall under two substantial divisions: (a) the Circuit Court of Leon County had ample jurisdiction to make and enter the restraining order; and (b) the petitioners have a plain and adequate remedy by way of appeal from the order or decree of the Circuit Court of Leon County, Florida.

The first question for determination here is: When money is in *custodia legis* and held by an order of the Supreme Court of Florida by the Sheriff thereof, can a Judge of a Circuit Court make and enter an order directing the control, custody or management thereof? The money was placed with the Sheriff of the Supreme Court by Donald and Elsie May Young for the purpose of procuring their appearance in this Court to await the decision or decree in a habeas corpus proceeding to test the validity of the attempted extradition of each from the State of Florida to the State of Indiana to answer a charge of larceny. This Court entered its final order or decree therein. See Donald Young and Elsie Mae Young v. Frank Stoutamire, as Sheriff of Leon County, Florida, filed November 4, 1937. The

said cause was then and there pending in the Supreme Court of Florida on November 4, 1937, for the purpose of a petition for rehearing or such other proceeding therein as should be conformable to law, and at said time the order under which the money, *supra,* was delivered to the Sheriff of the Supreme Court of Florida was in full force and effect. It can be considered here that the sum of $2278.90, property of the petitioners in the habeas corpus cases, at the time of entry of the order of the Circuit Court on November 4, 1937, was in custody of the law and subject only to the order of the Supreme Court of Florida.

Section 8334 C. G. L. authorizes magistrates, sheriffs, Judges, and all other officers having authority to accept cash bonds in all criminal cases and directs further for the handling of such funds by the officers, etc. The disposition of such funds deposited with an officer authorized to receive the same and the manner of refunding the same when the accused is entitled to a refund, is considered in 6 Corpus Juris, pages 1024-5, par. 278, viz.:

"DISPOSITION OF DEPOSIT. Money deposited in lieu of bail with an officer or judge is said to be held in trust by such person for the commonwealth, and on default for non-compliance with the conditions to secure the fulfillment of which the deposit was made it becomes forfeited, and when so forfeited it is considered and treated as though it was money recovered in a suit on a recognizance, and under some statutes it may be applied in payment of the fine or costs imposed on the accused, although it was in fact deposited by and belonged to a third person.

REFUNDING. But the accused is entitled to a return of the deposit where there has been a decision in his favor, as where he is discharged, where he surrenders himself, or where he has been illegally arrested, or the deposit has been illegally accepted, although such deposit was made by a

third person, as in such case there is a presumption that it belongs to the accused. He is also entitled to a return of any balance remaining after the payment of a fine and costs. But where a deposit by a third person is accepted without authority and is afterward restored to him the state has no such interest therein as to be entitled to compel its return."

A similar rule is expressed in Am. Jour. Volume 6, page 77, par. 71, viz.:

"DISPOSITION OF MONEY DEPOSITED.—The failure of the accused to appear and answer at the required time operates as a forfeiture of the deposit. If the accused is finally acquitted or a forfeiture set·aside, he is entitled to recover the money deposited, and the statute of limitations does not begin to run against his claim until after a demand for repayment has been made and refused. Interest also begins to run only from the time of such demand and refusal. In the event that the accused is convicted and, upon taking an appeal, filed a bond, with securities, he is entitled to recover the deposit previously made * * * If the deposit is so made, it should, if refunded, be paid to the accused rather than to the real depositor, but the accused is not entitled to assign it nor is it subject to the claims of his creditors, and if it should be refunded to such third person, it cannot be recovered in an action by the state * * *"

Section 8334 C. G. L., further provides: "if the bond shall be estreated, the money shall be immediately paid into the county treasury according to the conditions of the said bond, or returned to the defendant if he shall comply with the conditions of such bond." In this instance the accused compiled with the conditions of the bond by appearing to abide the decision of this Court on the habeas corpus suits *supra,* and it then became the duty of this Court by an order under the terms of the statute, *supra,* to return

the money to the accused or persons depositing the same with this Court. It is admitted in the record that the money belonged to or was owned by Donald and Elsie May Young. The owners, by a term or provision of the bond, directed that said moneys be paid to their attorneys. Property in the custody of the law (*custodia legis*) is defined by Bouvier's Law Dictionary, viz.:

"When property is lawfully taken, by virtue of legal process, it is in the custody of the law, and not otherwise; Gilman v. Williams, 7 Wis. 334, 76 Am. Dec. 219.

"Where a sheriff has taken under attachment more than enough property to satisfy it, the property is not *in custodia legis* in a sense that will prevent a levy by a U. S. Marshal in a suit in the federal court, so as to give the latter creditor a lien on the excess after satisfying the first attachment; Goodbar v. Brooks, 57 Ark. 450. Nor are executions issued on void judgments and their returns admissible against subsequent attaching creditors, to show that the goods were *in custodia legis;* Burr v. Mathers, 51 Mo. App. 470."

It is unnecessary for a decision of this case to determine the applicability of Section 8334 C. G. L. to the case at bar, but the law seems to be well settled independently of the statute *supra.*

In the case of Holker v. Hennessey, 141 Mo. 527, 42 S. W. 1090, 39 L. R. A. 165, the Court had before it similar questions and said:

"Generally speaking, in the absence of a statute an officer has no right to take any property from the person of the prisoner, except such as may afford evidence of the crime charged, or means of identifying the criminal or may be helpful in making an escape. The officer has the undoubted right to make the search, and, considering the na-

ture of the accusation, he may, when acting in good faith, take into his possession any articles he may suppose will aid in securing the conviction of the prisoner, or will prevent escape. 'He holds all such property, whether money or goods, subject to the order of the court; and, in proper circumstances, he will be directed to restore it, in whole or in part, to the prisoner.' * * *

"If the property was lawfully taken from the person of the prisoner, the act of the officer will be in the performance of an official duty. The sheriff being an officer of the court in which the indictment is pending, the money is in custody of the court, subject to its order. The rule of general application is that money or property which has come into the hands of an officer of a court by virtue of legal process is regarded as in the custody of the law, and cannot be taken from him under other process, either of execution, attachment or garnishment. * * *

"It is therefore our opinion that, if the money and property were taken from the person of the prisoners by authority of law, which the sheriff would be estopped to deny, it was in the custody of the law, and subject to the orders of the court in which the criminal proceedings were pending, and was not—at least until after conviction—subject to attachment at the suit of a creditor of a prisoner."

See Dale v. Brumbly, 98 Md. 468, 56 Atl. 807, 64 L. R. A. 112.

It is next contended that the respondents have an adequate remedy by way of appeal from the interlocutory order entered by the lower court on November 4, 1937, and that the proceedings here are in total disregard of the rules and decisions of this Court controlling writs of certiorari. The offices and functions of a common law writ of certiorari were before this Court in the case of Sea-

board Air Line Ry. v. Ray, 52 Fla. 634, text 637, 42 So. 714, when it was said:

"Certiorari is a common law writ, which issues in the sound judicial discretion of the court to an inferior court, not to take the place of a writ of error or an appeal, but to cause the entire record of the inferior court to be brought up by certified copy for inspection, in order that the superior court may determine from the face of the record whether the inferior court has exceeded its jurisdiction, or has not proceeded according to the essential requirements of the law, in cases where no direct appellate proceedings are provided by law. Basnet v. City of Jacksonville, 18 Fla. 523; Edgerton v. Mayor, Etc., 18 Fla. 528; Jacksonville T. & K. W. Ry. Co. v. Boy, 34 Fla. 389, 16 South. Rep. 290; Mernaugh v. City of Orlando, 41 Fla. 433, 27 South. Rep. 34."

See American Ry. Exp. Co. v. Weatherford, 84 Fla. 264, 93 So. 740. Likewise, in Great American Ins. Co. v. Peters, 105 Fla. 380; text 390-1, 141 So. 322, this Court said:

"* * * Proceedings in certiorari act upon the cause or proceedings in the lower court. At common law it was not regarded as an action, but as a special proceeding. The office of the writ is to bring up the proceedings of the court below for examination, that they may be affirmed or quashed, and not to enforce any rights growing out of those proceedings. The trial is had on the record alone. The main purpose of the common law writ was to confine inferior tribunals within their jurisdictions, to prevent them from exercising powers not delegated to them, and not to correct mere errors which they may have committed in exercising the powers delegated to them. Later it was also issued to quash proceedings which were not had 'according to the course of the common law.' 4 Encyc. of Pl. & Pr., 8-11. Tidd's Practice, 397, *et seq.* Spelling on Extr. Rem.

Secs. 1890-1921; 1949-1984.  Ferris on Extra Rem. Secs. 155-165.  It is quite clear that where a judgment has been rendered without jurisdiction, no real rights are conferred thereby, and as in its early history the writ usually issued on the ground that the inferior court had acted without jurisdiction, it does not clearly appear to have been the practice at common law to direct the writ to or serve process upon the parties to the cause.  The writ was usually directed to the tribunal and the effect of it was to remove the record and the cause from the lower court to the higher court, and it appears to have been assumed that this, in effect, brought the parties along with it * * * "

In Volume 10 American Jurisprudence pages 530-1 par. 6, it was said:

"DISCRETION IN GRANTING. * * *  A writ of certiorari will never be refused by the court in a proper case.  The writ, however, is not regarded as one of right, but rather as one which is discretionary with the court, in order to promote the ends of justice as effectively as possible.  Courts have always exercised a more liberal discretion in awarding or refusing writs of certiorari than in any other matter.  Nevertheless, the writ will not issue upon the mere suggestion of either party that there is error in the record of the proceedings below.  Special cause must be shown to the court to which application is made in order for the writ to issue.  The particular grounds upon which the showing must be made rest with the court, in the exercise of sound discretion.  In the absence of special statutory provisions, it is well settled that, before the court will grant a writ of certiorari, it must appear that: (1) The inferior tribunal has committed some error of law; (2) the error has caused substantial harm; and (3) the petitioner has been guilty of no laches in seeking his remedy.  Ordinarily, the writ is properly denied if the relator shows no equity and no in-

jury not remediable at law. Generally, the discretionary stage passes when the writ issues, and the record of the inferior court is certified. The court, thereafter, has no option but to hear and determine the cause."

The order of the Circuit Court of Leon County, Florida, dated November, 1937, complained of herein is subject to review on a writ of certiorari and the said order made is not warranted by the showing made in the record under the law applicable thereto; therefore, the motion to quash the writ of certiorari made on the part of the respondents is hereby denied and the aforesaid order so entered by the lower court is quashed.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.